Janet R. BLAKE, Appellant (Plaintiff below),

v.

Charles T. HOSFORD, Jr., Appellee (Defendant below).

No. 3-277A43.

Court of Appeals of Indiana, Third District.

April 11, 1979.

Rehearing Denied May 16, 1979.

Edgar A. Grimm, Grimm & Grimm, Auburn, for appellant.

Richard J. Kuster, Heckner & Associates, Ligonier, for appellee.

HOFFMAN, Judge.

Plaintiff-appellant Janet R. Blake (Wife) appeals from a judgment rendered against her which awarded a farm and certain personal property to defendant-appellant Charles T. Hosford, Jr. (Husband).

The facts necessary for disposition of her appeal are as follows: On June 10, 1960, the parties were married and resided in Albion, Indiana until 1972 when the family moved to Arizona. During the course of their marriage, they bought a 143-acre farm located in Noble County, Indiana from the husband's parents. As part of the contract for the sale of the farm, the parties also acquired farm machinery, livestock, and feed and grain.

On September 21, 1973, the couple obtained an Arizona decree which dissolved their marriage and disposed of all their property except for the aforementioned realty and personalty, life insurance policies, and checking accounts. The parties did not mention the excluded property to their attorneys or the judge because they wished to expedite the dissolution proceedings. The Wife initiated the present action in the Noble Circuit Court of Indiana on April 18, 1974, seeking a determination of her interest in the farm and personalty acquired during the marriage. The trial court entered the following judgment in favor of the Husband:

### FINDINGS OF FACT

"1. The Court now finds that the Plaintiff and Defendant were previously husband and wife having been married on June 10, 1960, and that their marriage was dissolved by a Decree entered on a Joint Petition filed by the plaintiff and defendant in the Superior Court for the County of Maricopa in the State of Arizona by a Decree of Dissolution Of Marriage entered by that Court on September 21, 1973;

"2. The Court further finds that during the marriage on the 13th of February, 1971, the plaintiff and defendant purchased real estate in the State of Indiana on contract from Charles T. Hosford, Sr. and Lillian A. Hosford, the mother and father of the defendant herein, together with certain articles of machinery, equipment, livestock, feed and grain, and silos situated on said real estate;

"3. The Court further finds that in January of 1973, the parties moved to the State of Arizona, and shortly

thereafter, the defendant returned to the State of Indiana to dispose of personal property and pay indebtedness from the proceeds of the sales, said indebtedness being owed both by the parties jointly and by the defendant through the operation of the farming business; and the defendant thereafter returned to the State of Arizona in July of 1973, and the plaintiff and defendant resided together as husband and wife until August of 1973, at which time they filed their joint petition for dissolution of marriage as hereinbefore referred to;

"4. The Court further finds that prior to the granting of the Decree, the parties entered into an Agreement whereby the plaintiff agreed to make no claim for moneys then in existence and agreed that the real estate in the State of Indiana would be received by the children of the parties upon the death of the defendant, said Agreement being entered into by the parties orally prior to the submission of their dissolution proceedings;

"5. The Court further finds that the Court in Arizona divided property between the parties setting over a mobile home, a 1968 pick-up truck and one-half of the balance in a checking account to the defendant, and granting to the plaintiff a 1972 Oldsmobile, the other one-half of the checking account balance and ordered the defendant to pay the balance due upon the automobile set over the plaintiff;

"6. The Court further finds that the agreement of the parties has been confirmed by a letter written by the plaintiff to the parents of the defendant on January 17, 1974, and introduced as Defendant's Exhibit A in the trial of this cause, and which letter provides in pertinent part as follows:

'I gave up any money or support for myself. He is only caring for the kids. I will take the furniture from here. The farm is to go to Roger, Clint, & Rena upon Bud's death.' and has further been confirmed by the testimony of the defendant during the trial of this cause, and has also been confirmed by the actions of the parties by entering into said agreement before the marriage was dissolved, and upon which agreement the defendant in this proceedings has relied, and upon which he has acted;

"7. The Court further finds that the defendant in reliance upon said agreed disposition of real estate and then remaining personal property and cash, agreed to the Arizona Decree being entered without mention of any property then situated in the State of Indiana, and said Decree did not set forth any reference to any of said property;

"8. The Court further finds that the plaintiff has voluntarily and intentionally relinquished any interest that she may have had in the real estate and personal property and moneys situated here in the State of Indiana, and that her actions constitute a waiver of any interests that she may have had in all of said property, all of the same being done pursuant to the Agreement of the parties as confirmed by her letter, the testimony of the defendant in this cause and the actions of the parties;

"9. The Court further finds that the plaintiff has no equity in, interest in, or right to receive any property under the control and in the possession of, and now owned by the defendant situated in the State of Indiana;"

## CONCLUSIONS OF LAW

"A. That the law is with the defendant;

"B. That the plaintiff and defendant's agreement is binding upon both of the parties, and that the plaintiff, therefore, has no equity in, interest

in or right to receive any property from the defendant now situated in the State of Indiana;

"C. That the Agreement of the parties has been confirmed by the conduct of the parties, the letter of the plaintiff and the testimony of the defendant, and is therefore binding upon both of the parties, and that the plaintiff should take nothing by her complaint."

■ The Wife claims there was insufficient evidence to support the finding that the parties reached an agreement disposing of their personal property before the dissolution decree. In determining whether the trial court's decision is supported by sufficient evidence, the evidence adduced at trial will not be reweighed. Review is limited to ascertaining if there is any evidence which, if believed by the trier of fact, would sustain the judgment. A reversal of the trial court's decision for insufficiency of the evidence is warranted only if there is no substantial evidence of probative value to support that decision. *Finley v. Chain* (1978), Ind.App., 374 N.E.2d 67.

■ While the record is replete with testimony about the acquisition and maintenance of the various items of personalty, there is a total lack of evidence that the parties agreed how that property would be divided when the parties dissolved their marriage. The only evidence which is remotely relevant is a portion of the Wife's letter which was written to the Husband's mother on January 17, 1974. It reads in part as follows: "I gave up any money or support for myself." However, this ambiguous statement, unexplained by any other evidence in the record, hardly carries "the quality of proof and having fitness to induce conviction" which the law requires in order to sustain that part of the judgment. *Hunnicutt v. Boughner* (1967), 141 Ind.App. 669, 231 N.E.2d 159. Therefore, there was not sufficient evidence that the couple agreed to a disposition of their personal property.

■ The Wife next argues that there was insufficient evidence that the parties agreed to a disposition of their respective interests in the farm. While the testimony on this point was conflicting, the evidence most favorable to the judgment revealed the following arrangement: the Wife relinquished her interest in the farm to the Husband. In return, he promised that the farm would go to their three children upon his death. The Husband also agreed that the Wife would receive most of the furniture, the household goods, and a car. This agreement was corroborated in part by the Wife's letter. Thus, there was sufficient evidence that the parties agreed how they would dispose of the farm.

Nonetheless, the question remains whether that agreement was embodied in a memorandum sufficient to satisfy the Statute of Frauds. IC 1971, 32–2–1–1 (1978 Burns Supp.) provides:

"No action shall be brought in any of the following cases:

"First. To charge an executor or administrator, upon any special promise, to answer damages out of his own estate; or,

"Second. To charge any person, upon any special promise, to answer for the debt, default, or miscarriage of another; or,

"Third. To charge any person, upon any agreement or promise, made in consideration of marriage; or

"*Fourth. Upon any contract for the sale of lands;* or,

"Fifth. Upon any agreement that is not to be performed within one [1] year from the making thereof; or

"Sixth. Upon an agreement, promise, contract or warranty of cure relating to medical care or treatment; Provided, however, That nothing in this subsection affects the right to sue for malpractice or negligence.

"Unless the promise, contract or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, excepting however, leases not

exceeding the term of three [3] years." (Emphasis added.)

 The statute, it will be noted, does not render a contract for an interest in land absolutely void between the parties, but merely leaves them without the power to enforce it. *Dubois Machine Co. v. Blessinger et al.* (1971), 149 Ind.App. 594, 274 N.E.2d 279. In order that an agreement or contract to convey land may be enforced, it must be evidenced by some writing: (1) which has been signed by the party against whom the contract is to be enforced or his authorized agent, (2) which describes with reasonable certainty each party and the land, and (3) which states with reasonable certainty the terms and conditions of the promises and by whom and to whom promises were made. *Young v. Bryan* (1977), Ind.App., 368 N.E.2d 1.

The trial court found that the oral agreement of the parties was confirmed in a letter written by the Wife to the Husband's mother on January 17, 1974. The relevant portion of that letter provides in part: "I gave up any money or support for myself. He is only caring for the kids. I will take the furniture from here. The farm is to go to Roger, Clint, & Rena upon Bud's death." It is uncontroverted that the Wife, as the party to be charged, signed the letter. Furthermore, the Wife does not contest the fact that the name "Bud" refers to the Husband.

 To meet the requirement of "reasonable certainty" in the description of the real estate, it is not necessary that the contract by itself be sufficient to identify the land, but only that it furnishes the means of identification. *Dowd v. Andrews* (1922), 77 Ind.App. 627, 134 N.E. 294.

 In *Lehman v. Pierce* (1941), 109 Ind.App. 497, 36 N.E.2d 952, the land to be partitioned was described in an instrument as the "property of my father" and in other letters as "the farm." The court held that these writings, though incomplete, furnished the means of identification and could be properly supplemented by parol evidence to identify the property. Similarly, the memorandum evidencing the agreement of the parties in the case at bar is incomplete in that it merely describes the property as "the farm." But following the rationale of *Lehman,* the admission of parol evidence to complete the description would not result in the contradiction or alteration of the description in the letter. Where it appears from extrinsic evidence that only one parcel of land answers the description in the memorandum, the courts are inclined to uphold a meager description of the property. 37 C.J.S. Statute of Frauds § 185. Thus, the land was described with reasonable certainty.

 Finally, the memorandum must embrace all of the essential terms of the agreement. Parol evidence is not admissible to supply any of the essential terms of a contract within the Statute of Frauds which the writing may have failed to express. *Neal v. Baker* (1926), 198 Ind. 393, 153 N.E. 768.

In *Neal,* the plaintiff alleged that the defendants promised to convey a farm to her in return for her caring for them until their deaths. The letter relied upon by the plaintiff read as follows:

"Our Dear Girl: We still caul you our girl—We will fill our promises. We will give you the home place—You now we will do just what we said and we will treat you just as good as we now how— You can help us out—Carrie ante well. We tocked things over—We want you to come home. We still think you belong to us—Home is lonesome without you— Everything will all be yours after our death. Now Essie pleas come home soon. "Good By

'Henry A. Haper, 'Caroline Haper.' "

The court held that "[f]or lack of a written contract, agreement, memorandum, or instrument of conveyance, either presently conveying the title to plaintiff or stating what was agreed to be done by her in return for which defendants' . . . were to 'give her the home place,' the evidence was insufficient to sustain a verdict or finding in plaintiff's favor." 153 N.E. at 772.

In *Sheldmyer v. Bias* (1942), 112 Ind.App. 522, 45 N.E.2d 347, the plaintiff relied upon a portion of a letter written to him by his aunt which stated, "Remember will give you the same kind of deed to South bungalow." This writing was also held insufficient because it did not set out what was to be done by the party seeking to enforce the agreement.

The common thread underlying both of these cases is that the writings failed to disclose the promise to be performed by one of the parties to the agreement. In the instant case, the Husband alleged that the Wife promised to convey her interest in the farm to him. However, the letter did not contain any such promise. It merely stated that the farm will go to the children upon the Husband's death. Since one of the essential terms of the contract was omitted, the agreement rested in parol. Thus, it is not enforceable.

The Wife also maintains that there was insufficient evidence to sustain the finding that the Husband relied on the agreement to his detriment. "The doctrine of estoppel to assert the statute of frauds against a claim based upon an oral contract is founded upon the vital principle that 'he who by his language or conduct leads another to do, upon the faith of an oral agreement, what *he would not otherwise have done, and changes his position to his prejudice,* will not be allowed to subject such person to *loss or injury,* or to avail himself of that change *to the prejudice of such other party.'* 49 Am.Jur., Statute of Frauds, § 583, page 890." (Original emphasis.) *Hurd etc. v. Ball et al.* (1957), 128 Ind.App. 278, at 295, 143 N.E.2d 458, at 466. The trial court found that, in reliance upon the oral agreement, the Husband agreed that the dissolution decree would be entered without any mention of the farm or personal property located in Indiana. However, it does not appear from the record that, without the agreement, the Husband would have acted differently. As a matter of fact, the Husband testified that the reason the parties did not mention the property to the court or their attorneys was to "speed up the divorce hearing." The only evidence of reliance in the record is the Husband's testimony that he sold certain items of farm machinery because of the agreement. Again, there was no evidence that the Husband changed his position to his prejudice especially since he was no longer actively engaged in farming.

Insofar as the agreement conveying the farm did not meet the requirements of the Statute of Frauds nor was there any reliance which took the agreement out of the operation of the statute, the next issue involves determination of the respective parties' interest in the farm.

The Wife contends that since the parties held the farm as tenants by the entirety during their marriage, upon dissolution they became tenants in common by operation of law because the farm had not been disposed of by the Arizona court when it rendered the dissolution decree. The Husband on the other hand, maintains that IC 1971, 31–1–11.5–11 (1978 Burns Supp.) is the proper law to apply because it vests discretion in the trial judge regarding the disposition of property upon the dissolution of a marriage. However, a careful examination of IC 1971, 31–1–11.5–11 reveals that the Husband's reliance is misplaced. The first clause of that statute states: "In an action pursuant to section 3(a) [subsection (a) of 31–1–11.5–3], the court shall divide the property of the parties . . . ." IC 1971, 31–1–11.5–3(a) refers to a cause of action for a dissolution of marriage. When the Wife filed her suit to determine her interest in the farm and personal property, her marriage had already been dissolved. Since her cause of action was not for dissolution of marriage, IC 1971 31–1–11.5–11, by its very terms, had no application to the case at bar.

Where real estate which is purchased on contract by tenants by the entirety is not disposed of in the divorce decree, the parties become tenants in common. IC 1971, 32–4–2–2 (Burns Code Ed.) provides as follows:

"In the event said husband and wife are divorced while said contract is in full force and effect then they shall own said interest in said contract and the equity thereby created in equal shares."[1]

In the case at bar, therefore, the couple owned the farm as tenants in common upon the dissolution of their marriage.

 The parties also became tenants in common with respect to any jointly-held personal property which was not disposed of in the Arizona dissolution decree. IC 1971, 31–1–12–17 (Burns Code Ed.) provides in part as follows:

"Any property, real, personal or mixed, owned as joint tenants or as tenants by the entireties by the parties to the divorce action which shall not be expressly included in and covered by the decree of divorce shall, upon the rendition of such decree, vest in such parties equally as tenants in common."

The Husband disputes the application of this statute by asserting that since IC 1971, 31–1–12–17 was repealed effective September 1, 1973, it could not govern the wife's cause of action which was filed in Noble Circuit Court on April 8, 1974. However, the Husband's argument ignores the language in the savings clause of Acts 1973, P.L. 297, Sec. 4. "This act shall be in full force and effect on and after September 1, 1973, except that this act shall not apply to any action for divorce then pending without a final decree entered, but upon the first entry of a final decree for divorce therein by the trial court, this act shall thereafter apply to such pending action, and to all final decrees entered after September 1, 1973."

Since the dissolution decree was not entered until September 21, 1973, the dissolution proceedings in Arizona were "then pending without a final decree entered" on the effective date of the Dissolution of Marriage Act, IC 1971, 31–1–11.5 *et seq.* (1978 Burns Supp.). Consequently, IC 1971, 31–1–12–17 was the proper law to apply in the instant case. The portion of the savings clause which provides "but upon the first entry of a final decree for divorce thereon by the trial court, such repeals shall thereafter apply to such pending action," contemplates a situation where one of the parties seeks to set aside the divorce or modify the divorce decree. In the present case, the Wife sought a determination of her interest in jointly-held Indiana property which had not been disposed of in the Arizona dissolution decree. In no way did she petition to modify or set aside the dissolution decree.

Accordingly, the judgment is reversed and remanded to the trial court with instructions to proceed in a manner consistent with this opinion.

Reversed and remanded.

GARRARD, P. J., concurs.

STATON, J., concurs in result.

---

1. IC 1971, 32–4–2–1 (Burns Code Ed.) establishes a presumption that when a husband and a wife purchase real estate on contract, a tenancy by the entirety has been created in the absence of *a contrary* expression.

In interpreting the predecessor statute to IC 1971, 32–4–2–2, the Court in *Lewis et al. v. Romine et al.* (1958), 128 Ind.App. 564, 151 N.E.2d 156 held:

"It has long been held in this state that a husband and wife owning real estate as tenants by the entireties, upon their divorce, shall thereafter hold and own the same as tenants in common. It therefore seems logical to hold that, in the absence of any determination of the property rights of the husband and wife by the court decreeing their divorce, a husband and wife purchasing real estate under a written contract, upon their divorce, become the owners of their interest in the contract and the equity thereby created as tenants in common in equal shares. Such holding seems consonant with the legislative intent notwithstanding the absence of express wording to that effect in said section 2 of the Act referred to."