**Laura M. JOHNSON, Appellant–Defendant,**

v.

**Betty Jean SPRAGUE, Appellee–Plaintiff.**

No. 08A01–9210–CV–354.

Court of Appeals of Indiana, First District.

May 26, 1993.

Michael A. Morrissey, O'Brien & Morrissey, Lafayette, for appellant-defendant.

Barry T. Emerson, Ives, Ives & Emerson, Delphi, for appellee-plaintiff.

NAJAM, Judge.

## STATEMENT OF THE CASE

In this appeal we are asked to determine whether a short memorandum signed by the parties contains sufficient terms to constitute an enforceable contract for the sale of real estate. Laura M. Johnson ("Johnson") appeals from a judgment in favor of Betty Jean Sprague ("Sprague") on Sprague's complaint for breach of contract. The trial court ordered specific performance and awarded attorney's fees. We affirm in part and reverse in part.

## ISSUES

We restate and consolidate the issues presented on appeal:

1. Was the memorandum for the sale of real estate sufficiently definite to satisfy the Statute of Frauds and to be specifically enforced where it lacked certain written terms?

2. Did the trial court err in ordering Johnson to pay Sprague's attorney's fees?

## FACTS

On July 6, 1991, Sprague telephoned Johnson to discuss the purchase of Johnson's cottage located in Beach Haven Subdivision on Lake Freeman in Carroll County ("Cottage"). Sprague had heard from friends that the Cottage was for sale. After a second telephone conversation a few days later, Johnson and Sprague arranged to meet so that Sprague could inspect the real estate.

Johnson and Sprague met at the Cottage on July 13, 1991. Johnson showed Sprague the interior of the Cottage room by room and the exterior of the premises as well. They discussed a sale of the Cottage, including certain personal property located within the Cottage, and after negotiating the price, the parties prepared two virtually identical documents on note paper. Johnson then signed one document on the back, which stated:

> "Check 7414 is for down payment on cottage
>
> 42,000.00
> −1,000.00
> _____
> 41,000.00
>
> I will relinquish if I don't buy or finish in one month—Aug. 13, 91"

Record at 74. Sprague then signed the other document. Record at 79. Sprague gave Johnson a check for $1,000.00 ("Check"). The memo entry on the Check states "down payment on cottage." Record at 72. Johnson emphasized that if Sprague failed to close the transaction within 30 days, she would forfeit the down payment.

After Johnson and Sprague had signed and exchanged these documents (hereinafter "Memorandum"), they discussed preparation of a deed and evidence of title and agreed that Sprague's attorney would prepare the closing documents and that they would share that expense equally. Johnson also introduced Sprague to a neighbor. With Johnson's approval, Sprague invited friends who lived nearby to come over, and Sprague showed the Cottage to her friends. Johnson indicated to those third parties that she had sold the Cottage to Sprague. Record at 134–40.

In the following days Sprague contacted Johnson several times by telephone, requesting that Johnson provide the evidence of title in Johnson's possession so that Sprague's attorney could prepare for the closing. Johnson promised to oblige, but her daughter then became involved, and Johnson failed to provide any documentation. Johnson never cashed the Check, and on August 7, 1991, her attorney returned the check to Sprague's attorney with a letter stating that there was not a valid contract to sell the Cottage. Record at 100.

Sprague filed suit on October 15, 1991, alleging breach of contract and seeking specific performance to compel Johnson to convey the Cottage to her. After a bench trial, the trial court entered judgment, finding that Johnson breached the agreement to sell the Cottage to Sprague and ordering specific performance. The trial court also ordered Johnson to pay Sprague's attorney's fees. Johnson appeals. We will state other necessary facts in our discussion.

## DISCUSSION AND DECISION

### Issue One: Specific Performance

Johnson claims that the agreement to sell the Cottage was not sufficiently definite to be an enforceable contract because the agreement lacked certain written terms and conditions, including an express promise to convey title. We find that the agreement meets the requirements of the Statute of Frauds and may be specifically enforced.

■ The granting of specific performance is committed to the sound discretion of the trial court. *Claise v. Bernardi* (1980), Ind.App., 413 N.E.2d 609, 612. We will only reverse the trial court's decision if we find an abuse of discretion, and we do not reweigh the evidence. *Id.* Johnson thus labors under a heavy burden in urging reversal.

The Statute of Frauds ("Statute") provides that:

"No action shall be brought in any of the following cases:

.     .     .     .     .

Upon any contract for the sale of lands;

.     .     .     .     .

Unless the promise, contract or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized...."

IND.CODE § 32–2–1–1. Generally, the enforceability of a contract for the sale of real estate depends upon it being in written form. *Summerlot v. Summerlot* (1980), Ind.App., 408 N.E.2d 820, 828. The Statute is designed to preclude fraudulent claims which would probably arise when one person's word is pitted against another's, and to prevent opening wide the flood-gates of litigation. *Id.*

■ Here, the main dispute concerns whether the writing is sufficient to constitute an enforceable contract. Under the Statute, an enforceable contract for the sale of land must be evidenced by some writing: (1) which has been signed by the party against whom the contract is to be enforced or his authorized agent; (2) which describes with reasonable certainty each party and the land; and, (3) which states with reasonable certainty the terms and conditions of the promises and by whom and to whom the promises were made. *Blake v. Hosford* (1979), 180 Ind.App. 175, 180, 387 N.E.2d 1335, 1340, *trans. denied.* Johnson concedes that she signed one of the two documents which form the Memorandum as the party against whom the

contract is to be enforced and that the Memorandum could be construed as adequate to describe the parties and the Cottage. However, Johnson argues that the writing fails to meet the third criterion of the *Blake* test and is unenforceable because it lacks essential terms and conditions. We disagree.

■■ The parties to a contract have the right to define their mutual rights and obligations, and a court may not make a new contract or supply omitted terms while professing to construe the contract. *Rodman v. City of Wabash* (1986), Ind.App., 497 N.E.2d 234, 240, *trans. denied.* Absolute certainty in all terms is not required, but if any essential elements are omitted or left obscure and undefined, so as to leave the intention of the parties uncertain respecting any substantial terms of the contract, the case is not one for specific performance. *Workman v. Douglas* (1981), Ind. App., 419 N.E.2d 1340, 1345.

■ Johnson contends that the agreement is inadequate to form a valid contract because it does not contain a promise to convey title. She has waived that argument by her failure to cite any authority supporting it. *See* Ind.Appellate Rule 8.3(A)(7). However, in her trial brief included in the record, Johnson contends that the holding in *Blake* requires that an express "promise to convey" title appear within the agreement. *See* Record at 16. We find no such specific requirement in the Statute. All that is required is reasonable certainty in the terms and conditions of the promises made, including by whom and to whom. *Blake,* 180 Ind.App. at 180, 387 N.E.2d at 1340. Here, on the face of the writing, there is ample evidence of mutual intent to buy and sell, and an owner's promise to convey title is implicit in a valid real estate contract without express words to that effect. The conveyance of title is the very purpose for the transaction and need not be stated expressly within the written instrument.

Johnson next argues that the parties made no agreement concerning the payment of real estate taxes. In contracts for the sale of real estate, it is customary for

the seller and the buyer to allocate responsibility for the payment of real estate taxes. This is usually a matter for negotiation, and local practice varies. The parties may take into account or ignore the fact that real estate taxes are paid in arrears in Indiana. In some cases taxes are pro-rated to the date of closing. In other cases, the seller will pay the taxes due through a certain May or November installment, and the buyer will assume and agree to pay all taxes which become due and payable thereafter. These terms are usually included in the deed. Thus, the question presented is whether a provision for the payment of real estate taxes is an essential and substantial term which the parties must have agreed upon before their real estate contract is enforceable.

In *Workman*, we held that an oral contract for the sale of real estate with monthly payments over a term of 25 years was not sufficiently definite to be enforced, and we determined that a provision for the payment of real estate taxes was one of several essential and substantial elements missing in that case. *Workman*, 419 N.E.2d at 1346. It is well-settled that our courts can only enforce the terms of a contract agreed upon and have no authority to make a new and different contract. *Id.* Thus, we cannot supply missing, essential terms.

However, unlike in *Workman*, in this case the parties did not negotiate an installment sale but a transfer of title within thirty days. Under these circumstances, the law provides the missing terms. As a general rule, all applicable law in force at the time an agreement is made impliedly forms a part of the agreement without any express statement to that effect. *Ethyl Corp. v. Forcum–Lannom Associates, Inc.* (1982), Ind.App., 433 N.E.2d 1214, 1220, *trans. denied.* Absent an agreement to the contrary, there is a presumption that the buyer will receive good title and that the seller will convey the fee simple title by a general warranty deed. Under IND. CODE § 32–1–2–12, that conveyance would be "free from all encumbrances," including the lien of real estate taxes. Accordingly, we hold that where a closing and delivery

of title in the proximate future is planned, an agreement on the payment of real estate taxes is not an essential term which must be expressed by the parties. Unless the parties otherwise agree, a conveyance of the fee simple title by warranty deed implies that the seller is responsible for all real estate taxes which are a lien on the day of closing. *See Millikan v. Hunter* (1913), 180 Ind. 149, 156–57, 100 N.E. 1041, 1043–44. The parties usually negotiate and agree upon the allocation of responsibility for real estate taxes, but the law will imply an agreement where none is made. Therefore, an agreement concerning the payment of real estate taxes was not essential to the parties' contract, and the absence of such an agreement does not render the contract invalid.

Johnson also argues that the contract is invalid because no agreement was made regarding the payment of a common area maintenance fee and a pier assessment. However, just as the payment of real estate taxes is not an essential term in this case, neither are these two fees. If these fees were Johnson's personal obligations, they would remain with her after the sale. If they are a lien or could give rise to a lien on the real estate, these would be Johnson's obligations as part of her duty to convey title free from all encumbrances. In either case, the absence of these terms in the contract does not render the Memorandum inadequate. *See Block v. Sherman* (1941), 109 Ind.App. 330, 340–41, 34 N.E.2d 951, 955 (*essential* stipulations and undertakings between parties must be expressed in written memorandum) (emphasis added).

Similarly, Johnson claims that the contract is invalid because in addition to the Memorandum, parol agreements were made with respect to the sale of a refrigerator, stove and other items of personal property located within the Cottage. Johnson is correct that the inclusion of oral terms within a written contract is usually sufficient to render the entire contract oral and, in the case of a land sale contract, unenforceable. *See Shrum v. Dalton* (1982), Ind.App., 442 N.E.2d 366, 370. In

*Shrum,* the terms included an oral condition precedent to performance of the real estate contract, which condition was the sale of other real estate to raise funds for the purchase. The sale of personal property was not involved. In this case, however, the Memorandum between Johnson and Sprague is complete in its essential terms with respect to sale of the real estate. A written memorandum is not required for the valid sale of personal property. *See Kluse v. Sparks* (1884), 10 Ind.App. 444, 446, 36 N.E. 914, 914. Thus, we conclude that an oral agreement for the sale of personal property collateral to the sale of real estate does not render an otherwise valid written real estate contract a parol contract for purposes of the Statute. An oral agreement for the sale of personal property is enforceable without a writing.

▇▇▇ Finally, Johnson contends that there was no agreement in the Memorandum on who would prepare the deed and provide evidence of title. As we have noted above, it was after Johnson and Sprague had signed and exchanged documents that they agreed orally to share closing costs. This was not a prior or contemporaneous oral agreement omitted from the writing but a subsequent oral agreement. However, if there is no express agreement, it is well-settled as a matter of common and actual practice that the responsibility for providing a good and sufficient warranty deed and proof of title belongs with the seller. The seller brings good title and evidence thereof to the closing table in consideration for the purchase money. Thus, the subsequent oral agreement between Johnson and Sprague to share closing costs does not render the Memorandum unenforceable.

The documents the parties signed could have been more complete, but they are sufficient to form an enforceable real estate contract under the Statute. We recognize a distinction between essential terms and collateral terms. Real estate contracts prepared by legal counsel and standard bar forms can easily run for several pages and include many provisions, but such contracts are not required as a matter of law.

The Memorandum correctly identified the parties, the real estate, the purchase price and the closing date, and it included Johnson's signature. The offer to purchase was accompanied by a check as down payment for the purchase price and identified as such. *See* Record at 72, 74, and 79. These documents are sufficiently definite to constitute an enforceable contract under the Statute. *See Foltz v. Evans* (1943), 113 Ind.App. 596, 607, 49 N.E.2d 358, 362–63 (Statute satisfied where "memorandum" forming agreement consists of several writings, only one of which is signed by party to be charged, if signed writing refers to unsigned writing and incorporates it into agreement); *cf. Dupont Feedmill Corp. v. Standard Supply Corp.* (1979), 182 Ind.App. 459, 463, 395 N.E.2d 808, 811 (signed check did not qualify under Statute where check, when signed, not intended to be part of contract for sale of land). Johnson has not shown that the agreement and its terms were inadequate, and we affirm the trial court's judgment on this issue.

### Issue Two: Attorney's Fees

Johnson also alleges that the trial court erred in ordering her to pay Sprague's attorney's fees. We agree.

▇▇▇ Indiana adheres to the American rule which requires the parties to pay their own attorney's fees absent an agreement, statute, or rule to the contrary. *Wernke v. Hallas* (1992), Ind.App., 600 N.E.2d 117, 123. The parties agreed to share the legal expenses for deed preparation and evidence of title. However, that agreement was not reflected in the written contract and, in any event, did not include attorney's fees incurred to enforce the contract after a breach.

▇▇▇ An exception to the American rule exists, however, for a litigant's obdurate behavior. *See Cap Gemini America, Inc. v. Judd* (1992), Ind.App., 597 N.E.2d 1272, 1288, *trans. denied.* The obdurate behavior exception provides that a trial court may award attorney's fees where a party has acted in bad faith. *Id.* To qualify as obdurate behavior, the conduct must be

vexatious and oppressive in the extreme. *Id.* The exception is limited to circumstances in which the defendant must defend against a baseless claim. *Id.*

Here, Johnson's claim was not baseless. She and Sprague negotiated for the sale of the Cottage and executed two small pieces of paper, which, accompanied by a check as down payment, were adequate to form a valid contract and to satisfy the Statute. *See Issue One.* However, the Record does not support the conclusion that Johnson's behavior was vexatious and oppressive in the extreme. Rather, Johnson disputed the operation and effect of the agreement after the fact, and she sought to rescind it when she later suffered "seller's remorse." Although her position has not prevailed, it was plausible, and her conduct was not obdurate. We thus reverse the award of attorney's fees.

Affirmed in part and reversed in part.

BAKER and FRIEDLANDER, JJ., concur.