**In the Matter of the ESTATE OF Robert E. BENDER, Deceased.**

**Beto Partners, LLC, Appellant–Petitioner,**

v.

**Estate of Robert E. Bender, Deceased, Appellee–Respondent.**

No. 06A04–0307–CV–377.

Court of Appeals of Indiana.

April 8, 2004.

Michael J. Andreoli, Jeffrey S. Jacob, Donaldson, Andreoli & Jacob, Zionsville, IN, Attorneys for Appellant.

Karl L. Mulvaney, Nana Quay–Smith, William M. Braman, Bingham McHale LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Petitioner Beto Partners, LLC, ("Beto") appeals the trial court's grant of summary judgment in favor of the estate of Robert E. Bender (the "Estate"), Respondent below, on Beto's petition to enforce option contract. We reverse and remand.

### Issue

Beto raises two issues, which we consolidate and restate as whether the trial court erred by granting summary judgment to the Estate because Beto's exercise of the option contract was within its statutory powers of dissolution.

### Facts and Procedural History

The relevant facts are undisputed. Beto was an Indiana limited liability company governed by the Indiana Business Flexibility Act ("Act").[1] Beto's Articles of Organization ("Articles") provided, in relevant part, that Beto "shall be managed by Operating Managers. The initial Operating Managers will be Clyde Bodkin [ ('Bodkin') ] and Edward Cabello [ ('Cabello').]" Appellee's App. at 18.

On November 29, 1999, Beto and Robert E. Bender ("Bender") executed a Purchase Agreement for real estate located at 98 S. Main Street in Zionsville, Indiana (hereinafter referred to as the "Commercial Building"), which included an option to purchase an adjacent parking lot ("Parking Lot"). The Purchase Agreement provides, in relevant part, as follows:

8. *Other Contingencies:*

\* \* \* \* \*

(c) *Option to Purchase Parking Lot.* To induce [Beto] to enter into this purchase agreement for the purchase of certain real estate known as Lot numbered 22 ( [Commercial] Building) ..., [Bender] hereby grants to [Beto] an option (the "Option"), exercisable as hereinafter provided, to purchase from Seller Lot numbered 23 (Parking Lot) located in the City of Zionsville, Boone County, Indiana:

[Legal description omitted]

at a price of one hundred thousand dollars ($100,000.00). Further, [Bender[2]] agrees to provide [Beto] with the

---

1. *See* Chapter 23, Article 18 of the Indiana Code.

2. The Purchase Agreement actually provides that: "Buyer agrees to provide Buyer with the use of eight (8) parking spaces...." Ap-

use of eight (8) parking spaces, without compensation, for the duration of the Option period as designated below.

*Exercise of Option*

The above option may be exercised at any time up to and including December 31, 2002. [Beto] must provide written notice to [Bender] via certified mail or personal delivery on or before December 31, 2002 of [Beto's] intent to purchase Lot 23 (Parking Lot). The closing of the transaction shall occur within thirty (30) days of [Bender's] receipt of notice of [Beto's] intent to purchase the Parking Lot. [Beto] shall provide to [Bender] a cashier's check or certified funds in the amount of one hundred thousand dollars ($100,000.00). In turn, [Bender] shall provide to [Beto] clear and marketable title to Lot 23. Further, Lot 23 shall be delivered by [Bender] to [Beto] in the condition of a Parking Lot.

Appellant's App. at 20–22 (emphasis in original).

At closing, on February 16, 2000, Bender and Beto executed the Memorandum of Option to Purchase Real Estate ("Memorandum of Option"), which provides that:

For and in consideration of One Dollar ($1.00) and other good and valuable consideration paid by [Beto] to [Bender,] [Bender] has agreed to grant to [Beto] an option to purchase certain real estate located in Boone County, Indiana more particularly described as follows (the "Real Estate"):

*Lot numbered 23 in Cross' second addition to the town of Zionsville, Boone County, Indiana, as recorded in plat record 2, page 63, Recorder's Office, Boone County, Indiana.*

subject to the terms and conditions set forth in a long form Purchase Agreement dated on or about November 30, 1999, . . . which Purchase Agreement by this reference is incorporated herein.

It is the intention of the parties hereto that this [Memorandum of Option] be recorded in the Office of the Recorder of Boone County, Indiana, for the purpose of effecting and affording record and constructive notice of the equitable interest of [Beto] herein, and in the Real Estate.

*Id.* at 27 (emphasis in original). On February 17, 2000, the Memorandum of Option was recorded in the Boone County Recorder's Office. However, Beto did not immediately exercise its Option to purchase the Parking Lot.

Subsequently, on February 2, 2001, Bender died and the Estate was opened on his behalf. Approximately one and one half years later, on October 1, 2002, Beto filed a Certificate of Dissolution with the Indiana Secretary of State, thereby, voluntarily dissolving its status as a limited liability company. The voluntary dissolution became effective on October 1, 2002. *Id.* at 15.

On November 6, 2002, Beto entered into an agreement to sell the Commercial Building ("Sale Agreement") to Brick Street Partners, Incorporated ("Brick Street Partners"). The Sale Agreement contains the following provision:

R. *Parking Lot:* [Beto] hereby agrees to exercise option upon and sell to [Brick Street Partners] at closing of 98 S. Main Street property, Parking Lot located across the street from subject property. [Brick Street Partners] shall pay [Beto] *One*

pellant's App. at 22. However, in context, it appears that the parties intended the Purchase Agreement to provide: "Seller [i.e., Bender] agrees to provide Buyer [i.e., Beto] with the use of eight (8) parking spaces...."

*Hundred Thousand and 00/100* dollars for parking Lot. In the event that Closing on 98 S. Main Street property does not take place before *December 31, 2002*, [Beto] agrees to exercise option upon and [Brick Street Partners] agrees to buy from [Beto] Parking Lot for $100,000.

*Id.* at 41. Pursuant to the terms of the Sale Agreement, on December 27, 2002, Bodkin sent notice to the Estate of Beto's intention to exercise its Option to purchase the Parking Lot for $100,000.00. On January 10, 2003, the Estate rejected Bodkin's exercise of the Option.

■ On February 5, 2003, Beto filed a petition to complete contract, requesting, in part, that the trial court order the Estate to comply with Beto's exercise of the Option to purchase the Parking Lot. Paragraph 15 of the petition alleges that Brick Street Partners's decision to enter into the Sale Agreement was based, in significant part, upon Beto's ability to exercise the Option and purchase the Parking Lot. In response, the Estate moved to dismiss Beto's petition. On February 24, 2003, the trial court informed the parties that, because matters outside the pleadings were submitted, it would treat the Estate's motion to dismiss as one for summary judgment. After conducting a hearing, the trial court granted summary judgment to the Estate.[3] On May 1, 2003, Beto filed a motion to correct error, which the trial court denied. This appeal by Beto ensued.

## Discussion and Decision

### I. Standard of Review

On review of a trial court's decision to grant or deny summary judgment, we apply the same standard as the trial court: we must decide whether there is a genuine issue of material fact that precludes summary judgment and whether the moving party is entitled to judgment as a matter of law. *Carie v. PSI Energy, Inc.*, 715 N.E.2d 853, 855 (Ind.1999). Once the moving party has sustained its initial burden of proving the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law, the party opposing summary judgment must respond by designating specific facts establishing a genuine issue for trial. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind.1992). We may consider only those portions of the pleadings, depositions, and any other matters specifically designated to the trial court by the parties for purposes of the motion for summary judgment. Ind. Trial Rule 56(C), (H). Any doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the nonmoving party. *Cowe v. Forum Group, Inc.*, 575 N.E.2d 630, 633 (Ind.1991). Although the nonmovant has the burden of demonstrating that the

---

**3.** The trial court's order contains the following language: "the [trial court] having considered the arguments of the parties, having reviewed the designated evidence, having determined that the Petition fails to state a claim for which relief may be granted, and having determined that there is no genuine issue of material fact and that the [Estate's] Motion to Dismiss should be GRANTED." Appellant's App. at 8. We note that where the trial court, in ruling on a motion to dismiss, considered matters outside the pleadings, as it did here, the motion should be treated by the trial court and will be reviewed by the Court of Appeals as a motion for summary judgment. *See* Ind. Trial Rule 12(B); *see also Azhar v. Town of Fishers*, 744 N.E.2d 947, 950 (Ind.Ct.App.2001). We further observe that Indiana Trial Rule 56(B) provides, in pertinent part, that: "When any party has moved for summary judgment, the [trial] court may grant summary judgment for any other party upon the issues raised by the motion although no motion for summary judgment is filed by such party."

grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that the nonmovant was not improperly denied his or her day in court. *Colonial Penn Ins. Co. v. Guzorek,* 690 N.E.2d 664, 667 (Ind.1997).

## II. Analysis

Beto argues that the trial court erred by granting summary judgment to the Estate because Beto's exercise of the Option, which was made after the company voluntarily dissolved, was permissible under the Act, i.e., specifically, Indiana Code Section 23–18–9–3. On appeal, Beto contends that the trial court's grant of summary judgment was inappropriate not because genuine issues of material fact exist, but rather, because, as a matter of law, it should have been granted in favor of Beto. In addition, we note that the parties appear to agree that, if valid, Beto's exercise of the Option was timely because it occurred prior to December 31, 2002. Thus, the controversy before us arises with respect to whether Beto's exercise of the Option, albeit timely, was binding upon the Estate.

▆▆ Beto asserts that its exercise of the Option was authorized by the Act because such exercise was an activity appropriate to winding up and liquidating its business affairs. Indiana Code Section 23–18–9–3, which governs a limited liability company's powers of dissolution, provides that:

(a) A dissolved limited liability company may only carry on business that is appropriate to wind up and liquidate its business and affairs, including the following:

(1) Collecting its assets.

(2) Disposing of properties that will not be distributed in kind to members.

(3) Discharging or making provision for discharging liabilities.

(4) Distributing the remaining property among the members.

(5) Doing every other act necessary to wind up and liquidate its business and affairs.

This statute prevents a dissolving limited liability company, such as Beto, from engaging in ongoing business transactions that are apposed to the winding up and liquidation of its business and affairs.

Here, Beto maintains that its exercise of the Option to purchase the Parking Lot was within its dissolution powers to collect assets, dispose of properties that will not be distributed in kind to members, or do every other act necessary to wind up and liquidate its business and affairs. By contrast, the Estate contends that Beto's post-dissolution exercise of the Option to purchase the Parking Lot created a new business liability for Beto in the amount of $100,000.00, i.e., the purchase price of the Parking Lot. As such, the Estate's argument continues, Beto's exercise of the Option was outside the scope of Indiana Code Section 23–18–9–3. We find Beto's argument more persuasive.

The undisputed evidence reveals that, on November 29, 1999, Beto received an Option to purchase the Parking Lot for $100,000.00, as an inducement to its purchase of the Commercial Building. Pursuant to the Purchase Agreement, Beto had the right to exercise the Option "at any time up to and including December 31, 2002." Appellant's App. at 22. Because the Option demonstrates that the parties intended to be bound by Beto's exercise of the Option and, further, that the parties agreed to the essential terms—i.e., upon Beto's exercise of the Option, Beto would purchase the Parking Lot for $100,000.00 on or before December 31, 2002—it is an enforceable contract. *See, e.g., Wolvos v. Meyer,* 668 N.E.2d 671, 674–75 (Ind.1996); *see also Johnson v. Sprague,* 614 N.E.2d

585, 588 (Ind.Ct.App.1993) (holding that to render a contract enforceable, "[a]ll that is required is reasonable certainty in the terms and conditions of the promises made, including by whom and to whom"). As such, had Beto exercised the Option prior to its dissolution of its status as a limited liability company on October 1, 2002, Bender, if alive, or the Estate, upon Bender's death, would have been contractually required to comply with the terms of the Option, i.e., sell Beto the Parking Lot for $100,000.00.

Thus, the question before us, which appears to be one of first impression, is whether a limited liability company's post-dissolution exercise of an option to purchase land—an asset that was acquired but not exercised prior to the dissolution—is appropriate to wind up and liquidate its business and affairs. This question requires us to utilize the tools of statutory construction, which provide, in pertinent part, that when a statute is unambiguous, a court must apply the plain and obvious meaning and not resort to other rules of construction. *See Brownsburg Area Patrons Affecting Change v. Baldwin*, 714 N.E.2d 135, 139 (Ind.1999). Because the statute at issue, Indiana Code Section 23–18–9–3, is not susceptible to more than one reasonable interpretation, it is not ambiguous. Accordingly, we apply the plain and obvious meaning of the statute.

Indiana Code Section 23–18–9–3, by its express terms, permits a dissolved limited liability company to collect assets, dispose of properties that will not be distributed in kind to members and to do every other act necessary to wind up and liquidate its business and affairs. The Act does not define the phrase "distribution in kind." However, BLACK'S LAW DICTIONARY defines "distribution in kind" as "[a] transfer of property in its original state, such as a

distribution of land instead of the proceeds of its sale." *Id.* at 487 (7th ed.1999).

In the present case, the relevant evidence demonstrates that, on November 29, 1999, Beto purchased the Commercial Building and the Option to buy the adjacent Parking Lot. The evidence further reveals that, on November 6, 2002, after its dissolution, Beto agreed to sell the Commercial Building to Brick Street Partners. The Sale Agreement, which was executed by Beto and Brick Street Partners, contains the following provision:

> R. *Parking Lot:* [Beto] hereby agrees to exercise option upon and sell to [Brick Street Partners] at closing of 98 S. Main Street property, Parking Lot located across the street from subject property. [Brick Street Partners] shall pay [Beto] *One Hundred Thousand and 00/100* dollars for parking Lot. In the event that Closing on 98 S. Main Street property does not take place before *December 31, 2002*, [Beto] agrees to exercise option upon and [Brick Street Partners] agrees to buy from [Beto] Parking Lot for $100,000.

Appellant's App. at 41. Accordingly, the Sale Agreement required Beto to exercise the Option and purchase the Parking Lot. Subsequently and pursuant to the Sale Agreement, Beto gave the Estate timely notice of its intention to exercise the Option.

From this evidence, it is clear that Beto entered into the Sale Agreement with Brick Street Partners to wind up and liquidate its business and affairs, i.e., to dispose of the Commercial Building, which was not being distributed in kind to the members of Beto. The Sale Agreement required Beto to exercise the Option to purchase the Parking Lot and, in turn, obligated Brick Street Partners to pay Beto the $100,000.00 for the Parking Lot. As such,

Beto's exercise of the Option did not create a new liability for Beto, but rather, induced Brick Street Partners to purchase the Commercial Building, thereby, allowing Beto to dispose of property that would not be distributed in kind to its members. Moreover, because Beto's act of exercising the Option allowed Beto to dispose of the Commercial Building, the act was not contrary to the winding up and liquidation of Beto's business and affairs. Accordingly, Beto's exercise of the Option was within the scope of its dissolution powers under Indiana Code Section 23–18–9–3. The trial court erred by granting summary judgment to the Estate on this issue. Rather, on the facts presented here, the trial court should have granted summary judgment to Beto.

 Nevertheless and in the alternative, the Estate argues that even if Beto's exercise of the Option were within its dissolution powers under the Act, it is invalid because, first, Bodkin signed it in his capacity as a member, not manager, of Beto and, second, Cabello, i.e., Beto's other manager, did not sign it. However, the Estate lacks standing to challenge Bodkin's authority to bind Beto via the exercise of the Option. The issue of standing focuses upon whether the complaining party is the proper one to invoke the court's power. *Scott v. Randle,* 736 N.E.2d 308, 315 (Ind.Ct.App.2000). As such, to establish standing, a party must demonstrate a personal stake in the outcome of the lawsuit and that the injury is a result of the other party's conduct. *Id.* at 315–16.

Here, the parties do not dispute that Bodkin exercised the Option on behalf of Beto. The parties further do not contest that had Beto's exercise of the Option been accepted, the Estate would have received $100,000.00 for the Parking Lot, as contemplated by the Purchase Agreement. Additionally, there were no other restrictions on the Option, other than the time within which the Option had to be exercised. Thus, even assuming that Bodkin lacked the authority to exercise the Option in his capacity as a member of Beto, if the Estate had honored the exercise of the Option, it would have received the bargained-for exchange of $100,000.00. As such, the Estate does not have a personal stake to challenge whether Bodkin properly exercised the Option on Beto's behalf, nor can the Estate establish any injury resulting from the Option being exercised by Bodkin on behalf of Beto. Rather, only other members and managers of Beto have standing to challenge Bodkin's exercise of the Option by virtue of Indiana Code Section 23–18–4–2 and other fiduciary duties applicable to business entities. *See, e.g.,* Ind.Code § 23–18–4–2, which provides that:

(a) Unless otherwise provided in a written operating agreement, a member or manager is not liable for damages to the limited liability company or to the members of the limited liability company for any action taken or failure to act on behalf of the limited liability company, unless the act or omission constitutes willful misconduct or recklessness.

(b) Unless otherwise provided in a written operating agreement, each member and manager must account to the limited liability company and hold as trustee for it any profit or benefit derived by the manager or member without the consent of a majority of the disinterested managers or members or other persons participating in the management of the business or affairs of the limited liability company from:

(1) a transaction connected with the conduct or winding up of the limited liability company; or

(2) any use by the manager or member of the limited liability company's property, including confidential or proprietary information of the limited liability company or other matters entrusted to the manager or member because of the manager's or member's status as manager or member.

For the foregoing reasons, we reverse the trial court's grant of summary judgment to the Estate and remand with instructions to enter summary judgment in favor of Beto.

Reversed and Remanded.

RILEY, J., and DARDEN, J., concur.