VAN PROOYEN BUILDERS, INC.,
Appellant–Defendant

v.

Earl L. LAMBERT, Jr., and Mildred Lambert, Appellee–Plaintiff.

No. 45A04–0811–CV–662.

Court of Appeals of Indiana.

June 5, 2009.

Michael J. Jasaitis, Timothy R. Kuiper, Austgen Kuiper & Associates, P.C., Crown Point, IN, Attorneys for Appellant.

Scott A. Pyle, UAW Ford Legal Services, Calumet City, IL, Attorney for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Van Prooyen Builders, Inc. ("Van Prooyen") appeals from the trial court's money judgment in favor of Earl Lambert, Jr., and Mildred Lambert ("the Lamberts") for real property taxes owed under their real estate purchase agreement. The parties dispute whether, given the "late" assessment of real property in Lake County, their agreement requires the proration of 2006 taxes payable in 2007. The trial court noted that "since 2002 no tax bills [in Lake County] have been delivered on time" and held that, "due to factors completely beyond control of the parties," the clause that requires that all real estate taxes "assessed against the subject property after closing shall be paid by the Buyer" is void as against public policy. *See* Appellant's App. at 31, 34, 46. We hold as a matter of law that, regardless of when the assessment was actually completed and the tax statements were issued, the March 1 statutory assessment date controls the operation and effect of the tax provision, which unambiguously prorates the 2006 taxes payable in 2007 as of the closing

date. Thus, we affirm the trial court's judgment for the Lamberts.

## FACTS AND PROCEDURAL HISTORY

The facts are not in dispute. On June 22, 2006, Van Prooyen and the Lamberts entered into an agreement ("Agreement") for the Lamberts to purchase real property and a newly constructed residence on that property from Van Prooyen. Paragraph ten of the Agreement (the "Tax Provision") stated as follows:

> 10. **TAXES, ASSESSMENTS AND PRORATIONS.** Real property taxes ... shall be prorated as of the Closing Date. SELLER shall be charged with and pay taxes on the Property ... that are payable in the current year and for that portion of taxes payable the following year calculated as of the Closing Date, and BUYER shall pay all taxes subsequent thereto. Proration shall be on the basis of the current tax rate and assessed valuation as of the Closing Date. ... All Real Estate taxes assessed against the subject property after closing shall be paid by the Buyer, regardless of any reassessment.

*Id.* On July 6, 2006, the parties closed on the sale. At that time, Lake County had not assessed the property for 2006 taxes payable in 2007, and at the closing the Lamberts did not receive a credit for any part of those taxes.

On July 9, 2008, the Lamberts filed this small-claims action against Van Prooyen seeking $1,561.45, or the property's tax liability prorated from January 1 to July 5, 2006. After hearing evidence and argument, and after taking "judicial notice ... [that] every taxpayer in Lake County has dealt with the reality that since 2002 no tax bills have been delivered on time," the court concluded that the Tax Provision is contrary to public policy and therefore void. Appellant's App. at 31–34. The

court entered judgment against Van Prooyen accordingly. This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

Van Prooyen appeals from the trial court's judgment that the Tax Provision is void as against public policy. We conclude that this case does not present a question of public policy but of contract interpretation. In such appeals, our standard of review is well established:

> Judgments in small claims actions are subject to review as prescribed by relevant Indiana rules and statutes. Under Indiana Trial Rule 52(A), the clearly erroneous standard applies to appellate review of facts determined in a bench trial with due regard given to the opportunity of the trial court to assess witness credibility. This deferential standard of review is particularly important in small claims actions, where trials are informal, with the sole objective of dispensing speedy justice between the parties according to the rules of substantive law. But this deferential standard does not apply to the substantive rules of law, which are reviewed de novo just as they are in appeals from a court of general jurisdiction. Similarly, where a small claims case turns solely on documentary evidence, we review de novo, just as we review summary judgment rulings and other paper records. The only issue in this case turns on the meaning of the contract, which is a pure question of law and is reviewed de novo.

*Trinity Homes, LLC v. Fang,* 848 N.E.2d 1065, 1067–68 (Ind.2006) (citations and quotations omitted).

The goal of contract interpretation is to ascertain and enforce the parties' intent as manifested in the contract. *See Gregg v. Cooper,* 812 N.E.2d 210, 215 (Ind.Ct.App.

2004), *trans. denied.* To that end, "[w]e construe the [contract] as a whole and consider all of the provisions of the contract[,] not just individual words, phrases, or paragraphs." *Id.* That is, we will accept an interpretation of a contract that harmonizes its provisions rather than an interpretation that leaves those provisions in conflict. *See Vann v. United Farm Family Mut. Ins. Co.,* 790 N.E.2d 497, 504 (Ind.Ct.App.2003), *trans. denied.* Also, "it is well settled that, unless the contract provides otherwise, all applicable law in force at the time the agreement is made impliedly forms a part of the agreement without any statement to that effect." *Miller v. Geels,* 643 N.E.2d 922, 928 (Ind. Ct.App.1994), *trans. denied; see also Evansville–Vanderburgh Sch. Corp. v. Moll,* 264 Ind. 356, 366, 344 N.E.2d 831, 839 (1976); *Johnson v. Sprague,* 614 N.E.2d 585, 589 (Ind.Ct.App.1993). However, when a contract is clear and unambiguous, the language must be given its plain meaning. *See, e.g., Tippecanoe Valley Sch. Corp. v. Landis,* 698 N.E.2d 1218, 1221 (Ind.Ct.App.1998), *trans. denied.*

### Tax Provision

As background, we note that:

In contracts for the sale of real estate, it is customary for the seller and the buyer to allocate responsibility for the payment of real estate taxes. This is usually a matter for negotiation, and local practice varies. The parties may take into account or ignore the fact that real estate taxes are paid in arrears in Indiana. In some cases taxes are prorated to the date of closing. In other cases, the seller will pay the taxes due through a certain May or November installment, and the buyer will assume and agree to pay all taxes which become due and payable thereafter. These terms are usually included in the deed.

*Johnson,* 614 N.E.2d at 588–89. The Indiana Code provides likewise:

The owner of any real property on the assessment date of a year is liable for the taxes imposed for that year on the property, unless a person holding, possessing, controlling, or occupying any real property on the assessment date of a year is liable for the taxes imposed for that year on the property under a memorandum of lease or other contract with the owner that is recorded with the county recorder before January 1, 1998....

When a person other than the owner pays any property taxes, as required by this section, that person may recover the amount paid from the owner, unless the parties have agreed to other terms in a contract.

Ind.Code § 6–1.1–2–4(a) (2008).

■ Indiana statutes determine liability for the payment of real property taxes. Indiana Code Section 6–1.1–1–2(1) states that "'[a]ssessment date' means[ ] March 1 for all tangible property...." And "[t]he owner of any real property on the assessment date of a year is liable for the taxes imposed for that year on the property." I.C. § 6–1.1–2–4. One who is personally liable for real property taxes may be subject to a civil lawsuit instituted by a county treasurer or a county executive for collection of delinquent taxes. I.C. § 6–1.1–22–10. Further, the State "acquires a lien on each tract of real property for all property taxes levied against the tract.... *This lien attaches on the assessment date ....* The lien is not affected by any sale or transfer of the tract...." I.C. § 6–1.1–22–13(a) (emphasis added). That is, on March 1 of each year the State acquires a lien against taxable real property, even if the amount of that tax is unknown.

■ Thus, real property tax liability is both in personam and in rem. As the successor in title, the purchaser of real property is primarily concerned with the in

rem tax liability. And given the delay in Indiana between assessment and billing, parties to a real-estate transaction frequently close with the knowledge that the current year's taxes are a lien in an amount not yet ascertainable. But the fact that the amount of the lien is unknown on the date of closing does not abrogate the statute, which provides that the lien attaches on the assessment date, March 1, and does not preclude the parties from contracting to allocate responsibility for the unknown tax liability between the seller and the buyer.

In recent years many Indiana counties have experienced delays in the implementation of new assessment guidelines and the assessment of real property. Those delays have followed court-ordered, statewide reassessment and the enactment of Indiana's new "trending" system of taxation.[1] *See, e.g.,* I.C. §§ 6–1.1–4–1 to –41; *State Bd. of Tax Comm'rs v. Town of St. John,* 702 N.E.2d 1034, 1041–43 (Ind.1998). And those delays have caused many Hoo-

siers uncertainty and inconvenience in the payment of their real estate taxes. Indeed, the circumstances that gave rise to the instant case were triggered by the delay in Lake County's 2006 assessment. The trial court indicated that similar proration problems existed in more than twenty cases before the court and speculated that "this is happening probably thousands of times each year." Appellant's App. at 30, 32.

▮▮▮ Here, Van Prooyen was the owner of the real property on the March 1, 2006, assessment date.[2] Accordingly, Van Prooyen was personally liable for the 2006 taxes payable in 2007 on the property. *See* I.C. § 6–1.1–2–4(a); *Miller,* 643 N.E.2d at 928. Nonetheless, Van Prooyen and the Lamberts were free to "agree[ ] to other terms in a contract." I.C. § 6–1.1–2–4(a).

▮▮▮ With that in mind, we turn to the Tax Provision. The first sentence of the Tax Provision unambiguously states that

---

1. Under the trending system, local assessors "annually adjust[ ] the assessed value of real property to account for changes in value in those years since a general reassessment of property last took effect." I.C. § 6–1.1–4–4.5(a). The "adjusted" values were to take effect "beginning with the 2006 assessment date [March 1] and [be applied] each year thereafter that is not a year in which a reassessment becomes effective." I.C. § 6–1.1–4–4.5(b). The first general reassessment under the trending system began in July of 2000 for taxes payable in 2003, and the second general reassessment is to begin on July 1, 2009, with subsequent general reassessments "each fifth year thereafter." I.C. § 6–1.1–4–4(a), (b). Each reassessment "shall be completed on or before March 1 of the year that succeeds by two (2) years the year in which the general reassessment begins" and "shall be the basis for taxes payable in the year following the year in which the general reassessment is to be completed." I.C. § 6–1.1–4–4(a), (b). That is, the general reassessment that begins in July of 2009 is to be completed by March 1, 2011, for taxes payable in 2012.

2. In its Reply Brief, Van Prooyen states, in a footnote, that:

   the trial court (without evidence to support) suggests that the Appellant should pay the judgment (taxes) because the Appellant was the owner of the property for the approximate[ly] 6 months prior to the closing. However, not only was there no evidence of that fact, a review of the public record of the county reveals that the Appellant owned the property at issue for less than two days.

   Reply at 7 n. 1. Van Prooyen does not support that assertion with citations to the record that would indicate it made that argument to the trial court, and Van Prooyen did not raise the question of its ownership of the property in its initial brief on appeal. *See* Ind. Appellate Rules 46(A)(8), (C). In civil cases, a party cannot raise an issue for the first time on appeal, let alone in a reply brief. *See, e.g., Felsher v. Univ. of Evansville,* 755 N.E.2d 589, 593 n. 6 (Ind.2001). As such, we do not consider Van Prooyen's comment.

the 2006 property taxes payable in 2007 shall be prorated between the seller and buyer. Specifically, the proration of the tax liability was such that "SELLER shall be charged with and pay ... that portion of taxes payable the following year calculated as of the Closing Date, and BUYER shall pay all taxes subsequent thereto." Appellant's App. at 46. This standard clause means that the seller is responsible for the taxes assessed against the property for that part of the year in which the seller holds title to the property. Further, the statement that taxes would be "calculated as of the Closing Date" means that the closing date is the date used to prorate the tax liability between the seller and the buyer. The fact that the parties contemplated that Van Prooyen's liability would extend to the lien for taxes not yet assessed at the time of closing is additionally shown by the "shall be charged with and pay" language.

The second sentence in the Tax Provision also demonstrates the parties' intent to prorate the tax liability for the 2006 taxes payable in 2007. That sentence appears on its face to control the question of proration: "Proration shall be on the basis of the current tax rate and assessed valuation as of the Closing Date." *Id.* That sentence means that when, as here, the current or following year's tax rate and assessed valuation are unknown on the date of closing, the parties simply use the last known tax rate and assessed valuation as if they will be the same for the next year. That language allows the allocation of taxes to be determined and settled at the closing.

Nevertheless, the last sentence in the Tax Provision states that "[a]ll Real Estate taxes assessed [3] against the subject property after closing shall be paid by the Buyer." *Id.* Van Prooyen relies on that sentence for its claim that it has been relieved of all 2006 tax liability. In effect, Van Prooyen contends that because Lake County did not complete the statutory assessment until after the closing it is entitled to a windfall. We cannot agree.

As discussed above, Indiana law sets the date on which real property taxes are "assessed against the property" as March 1 of each year. *See* I.C. § 6–1.1–1–2. Van Prooyen maintains that assessment of the property was not completed until after the closing and, thus, the date on which the assessment was actually completed is the "assessment date" for taxes under the Agreement. That interpretation of the last sentence in the Tax Provision disregards the statutory definition of "assessment date" and conflicts with the two unambiguous statements in the Tax Provision that the parties agreed to prorate the 2006 tax liability. The last sentence in the Tax Provision should not be read in isolation but should and can be reconciled with the previous sentences that prorate the 2006 tax liability.

It is our task in the interpretation of a contract to harmonize its provisions and to avoid an interpretation that leaves provisions in conflict. *See Vann,* 790 N.E.2d at 504. And "we cannot supply missing, essential terms." *Johnson,* 614 N.E.2d at 589. Here, the apparently inconsistent statements can be reconciled without resort to adding new definitions to terms. The parties did not define "assessment date" in the Agreement to mean the actual assessment date. Thus, the only "assessment date" of any relevance to the agreement is the assessment date provided

---

**3.** We assume that by "assessed" the parties intended to reference both general reassessments and annual adjustments to those assessments. *See* I.C. §§ 6–1.1–4–4, –4.5.

by the Indiana Code, namely, March 1. *See* I.C. § 6–1.1–1–2; *Miller,* 643 N.E.2d at 928. In other words, the date on which the tardy tax assessment was actually completed relates back to the statutory March 1 assessment date.[4]

In sum, the fact that Lake County was late in assessing the real property taxes does not affect the parties' intent to prorate taxes according to their ownership of the property. The Tax Provision's last sentence means, simply, that once the Lamberts became title owners they likewise became personally responsible for those property taxes attributable to their ownership, regardless of any reassessments or adjustments, and that the Lamberts would be responsible for satisfying any tax liens against the property that attached after they acquired the title. We therefore must affirm the trial court's judgment for the Lamberts.[5]

### Conclusion

The dispositive question in this appeal is not whether the Agreement violates public policy but whether the Tax Provision unambiguously provides for the proration of the 2006 tax liability. We hold that the statutory assessment date controls the Tax Provision, which is consistent with the parties' clear intent to prorate the tax liability. *See Moll,* 264 Ind. at 366, 344 N.E.2d at 839; *Miller,* 643 N.E.2d at 928; *Johnson,* 614 N.E.2d at 589. We affirm the trial court's judgment that Van Prooyen is required to pay to the Lamberts that portion of the 2006 taxes, payable in 2007, attribut-

able to Van Prooyen's ownership of the property calculated to the closing date.

Affirmed.

FRIEDLANDER, J., and VAIDIK, J., concur.

---

4. The parties do not suggest that Lake County's delay in actually assessing the property resulted in an assessment that was in any way different than that assessment would have been had it occurred on March 1.

5. The Lamberts advance a second, "merger-by-deed" argument on appeal in support of

the trial court's judgment. That argument is not adequately developed either in the record or in the Lamberts' brief. Given our holding that the Agreement is unambiguous on the issue of proration, we need not discuss this alternative argument.