

**FILED**

May 04 2017, 8:41 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Nancy A. McCaslin
McCaslin & McCaslin
Elkhart, Indiana

ATTORNEY FOR APPELLEE

Steven J. Olsen
Yoder, Ainlay, Ulmer &
Buckingham, LLP
Goshen, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| William J. Knapp and Rosalea M. Knapp, <br><br> *Appellants,* <br><br> v. <br><br> The Estate of Carl R. Wright and Joan M. Wright, <br><br> *Appellees* | May 4, 2017 <br><br> Court of Appeals Case No. 20A05-1610-PL-2344 <br><br> Appeal from the Elkhart Superior Court <br><br> The Honorable Stephen R. Bowers, Judge <br><br> Trial Court Cause No. 20D02-1405-PL-131 |

**Crone, Judge.**

# Case Summary

[1] William J. Knapp and Rosalea M. Knapp appeal the trial court's entry of partial summary judgment and award of damages in favor of Carl R. Wright and Joan M. Wright.[1] The Knapps argue that the trial court erred in concluding that a written contract for the sale of land was unenforceable pursuant to the Statute of Frauds for lack of a reasonably certain description of the land being sold. Determining that no genuine issue of material fact remains on this issue, we conclude that the trial court properly entered partial summary judgment in favor of the Wrights. The Knapps raise additional issues regarding the trial court's subsequent order awarding damages to the Wrights and its order discharging the Knapps' lis pendens notice regarding the subject real estate. Finding no error or abuse of discretion, we affirm the trial court's judgments.

# Facts and Procedural History

[2] The relevant material facts indicate that at all times relevant herein, the Wrights owned a fifty-six-acre parcel of property ("the Property"), which included a private lake, in Bristol. In 1993, the Wrights permitted the Knapps, the Wrights' daughter and son-in-law, to move into a residential dwelling located

---

[1] Carl R. Wright is now deceased. On November 1, 2016, the trial court granted the Knapps' motion to substitute "The Estate of Carl Wright" as a party to this appeal. Therefore, the caption for this appeal reflects that change. The Wrights briefly mention in a footnote that no estate has been opened and no personal representative has been appointed for Carl R. Wright, and that perhaps the motions panel of this Court erred in denying their motion to dismiss this appeal for lack of jurisdiction on that basis. The Wrights cite to no authority or expand further on this assertion and, without more, we decline the invitation to reconsider the issue.

on a portion of the Property at no cost to the Knapps. On February 27, 1999, the Wrights and the Knapps entered into a lease agreement and option to purchase ("the Lease"). The Lease contained the following description of the portion of the Property being leased:

> certain real estate with an address of 51551 County Road 133, Bristol, Indiana 46507 (along with an easement for ingress and egress from County Road 133 to the property along the existing pathway) but only that part of the real estate that has the approximate boundary lines as shown on the attached Exhibit A, but retaining 50 feet for the [Wrights] along the railroad tracks.

Appellants' App. Vol. 2 at 37. However, no Exhibit A was attached to the Lease to describe that part of the Property that was considered the leased premises. The Lease was for a term of five years. The Lease provided an option to purchase that stated in relevant part:

> Provided [the Lease], or any renewal thereof, herein stated, is in full force and effect (i.e. has not expired, been terminated or otherwise rendered inapplicable), [the Knapps] [are] hereby granted the option and right to purchase the leased premises, listed items of personal property (if any), free and clear of any liens or encumbrances, for the sum of Fifty Thousand Dollars ($50,000.00). Said option, if it is to be exercised, must be exercised, in writing, prior to the termination of this Lease, or any extension thereof.

*Id*. at 41.

Moreover, the Lease also provided that if the Knapps paid the full option price within thirty days of exercising the option to purchase, the Knapps would have also received a

> right of first refusal to purchase additional acreage to the east of the real estate, which additional real estate would include the additional structures to the east, sufficient to allow [the Knapps] to purchase a total of three (3) acres when combined with the real estate being leased hereunder, but such legal description to be as agreed by the parties with [the Wrights] retaining 50 feet along the railroad tracks.

*Id*. at 43. The Knapps did not exercise their option to purchase by paying the full purchase price within the time allotted pursuant to the Lease, and the Lease terminated on December 31, 2003.

Thereafter, on November 1, 2004, the Wrights and the Knapps entered into a contract for sale of real estate ("the Real Estate Contract"). Like the Lease, the Real Estate Contract described the portion of the property being sold as:

> certain real estate with an address of 51551 County Road 133, Bristol, Indiana 46507 (along with an easement for ingress and egress from County Road 133 to the property along the existing pathway) but only that part of the real estate that has the approximate boundary lines as shown on the attached Exhibit A, but retaining fifty (50) feet for the [Wrights] along the railroad tracks. Upon payoff of this land contract, the parties shall have the property surveyed to provide a legal description of the property being purchased by [the Knapps].

*Id.* at 48.  No Exhibit A was attached to the Real Estate Contract to describe that part of the Property being sold.  The Real Estate Contract further provided that the Lease was now void and of no further force and effect.  After entering into the Real Estate Contract, the Knapps made monthly payments to the Wrights.  The Knapps never paid any real estate taxes on any portion of the Property.

[5]  In May 2013, believing that they had "paid off the land contract,"[2] the Knapps sought a warranty deed from the Wrights as to a three-acre portion of the Property, which included a residential dwelling, a pony barn, a shop building, and water rights to the private lake, that the Knapps assumed that they had been purchasing pursuant to the Real Estate Contract.  Appellants' Br. at 31.  The Wrights, however, believed that they had been selling only approximately one acre of land that included the residential dwelling and no water rights to the private lake.  It was the Wrights' understanding that the one acre portion of the Property was identified on a hand-drawing.  The Knapps learned that the Wrights' attorney, who drafted both the Lease and the Real Estate Contract, possessed in his files a loose, undated, and unmarked drawing, not attached to any document, that depicted the boundaries of approximately one acre of the Property.  Thereafter, the Wrights commissioned a survey of the approximate one acre of land that they considered to be the subject of the Real Estate

---

[2] The Real Estate Contract required the Knapps to pay for real estate taxes and insurance on the portion of the property covered by the contract.  *See* Appellants' App. Vol. 2 at 50-51.  The record reflects, and the Knapps admit, that they did not pay such amounts as required.

Contract, and had the survey recorded. The familial relationship between the parties quickly deteriorated, and beginning in June 2013, the Knapps occupied a one-acre portion of the Property and used the private lake without making any further payments to the Wrights.

[6] In May 2014, the Knapps filed a complaint against the Wrights alleging that they are entitled to three specific acres of the Property, as well as a legal right to use the private lake adjacent to the three acres, pursuant to the Real Estate Contract. The Wrights filed their answer, as well as counterclaims for foreclosure, injunctive relief, assault and battery, and trespass. The Knapps subsequently filed an amended complaint to quiet title and for specific performance, injunctive relief, and trespass, alleging that, in addition to being the rightful owners of three specific acres of the Property or such acreage that the Wrights acquiesced to by their actions, they are entitled to an easement for a drainage field.

[7] The Wrights replied with an amended answer asserting, among other things, the Statute of Frauds as an affirmative defense. The Wrights also filed an amended counterclaim requesting a judgment declaring the Real Estate Contract unenforceable and ordering the Knapps to forgo any claim and interest in the Property. To avoid the unjust enrichment of any party, the Wrights requested a quasi-contract remedy of ordering the Knapps to pay the Wrights the fair market rental value for a portion of the Property for the period during which they occupied the Property, and ordering the Wrights to pay the Knapps any amounts the Knapps had already paid in connection with the

unenforceable Real Estate Contract to the extent those amounts exceeded the fair market rental value.

[8] Thereafter, the Wrights filed a motion for partial summary judgment as to their amended counterclaim alleging that the Real Estate Contract lacked an essential term, i.e., a sufficient description of the property being sold, such that the contract is unenforceable pursuant to the Statute of Frauds. The Knapps responded and agreed that a sufficient description of the property being sold was not contained in the Real Estate Contract and that no exhibit otherwise describing the property being sold was attached to the contract. The Knapps further stated that the loose, undated, and unmarked drawing found by the Wrights' attorney in 2013 was not attached to the Real Estate Contract when they signed it, nor was there any evidence that it was intended to be the description of the portion of the Property being conveyed. Instead, the Knapps maintained that the doctrines of acquiescence and estoppel were "exceptions" to the Statute of Frauds that were applicable to defeat the Wrights' motion for partial summary judgment. Appellants' App. Vol. 5 at 61. The Knapps also filed a cross-motion for summary judgment alleging that the Wrights' foreclosure claim based on unpaid taxes and insurance was barred by the doctrine of accord and satisfaction, and the Knapps further requested dismissal of the Wrights' counterclaims premised on the Knapps' alleged lack of riparian rights.

[9] On October 22, 2015, the trial court entered an amended order granting partial summary judgment in favor of the Wrights and denying the Knapps' cross-

motion for summary judgment as moot. Specifically, the trial court determined as a matter of law that the Real Estate Contract was unenforceable and that the Knapps do not have an ownership interest, equitable or otherwise, in any portion of the Property, and thus partial summary judgment in favor of the Wrights was warranted. The court further determined that the Knapps' cross-motion for summary judgment was moot because the issues raised therein presupposed the enforceability of the Real Estate Contract, which had now been deemed unenforceable.

[10] On November 18, 2015, the Knapps filed their first notice of appeal, which was subsequently dismissed without prejudice.[3] On November 20, 2015, the Knapps also filed a motion to stay execution of the trial court's amended order. The Wrights filed their objection to a stay and, in July 2016, also filed a motion for immediate possession of real property from the Knapps and requested the trial court to enter an order denying the Knapps' motion to stay execution of the trial court's amended order.

[11] The trial court heard argument on the motion for stay in July 2016, and set bond at $90,000 to be paid by the Knapps within seven days. The Knapps did not post the bond and requested an extension of time to do so. Following a

---

[3] Concluding that the partial summary judgment order that the Knapps were attempting to appeal was not eligible for an interlocutory appeal as of right under Indiana Appellate Rule 14(A), and had not been certified for discretionary interlocutory appeal under Indiana Appellate Rule 14(B), this Court dismissed the appeal without prejudice and remanded to the trial court for further proceedings. We specifically ordered that the Knapps, after filing a new notice of appeal, were permitted to raise the issues that they would have raised, along with any new issues created by the trial court's ruling on remand.

hearing, the trial court denied the extension and entered an order of immediate possession in favor of the Wrights. On September 12, 2016, the Knapps filed a notice of lis pendens claiming an ownership interest in a portion of the Property arising out of the Real Estate Contract. The Wrights then filed an emergency motion for discharge and release of lis pendens stating that the lis pendens was based upon a contract that had been declared unenforceable by the trial court.

[12] On September 21, 2016, the trial court held an evidentiary hearing on the issue of damages. Thereafter, on September 23, 2016, the trial court awarded the Wrights $24,000 in damages and entered a final appealable order stating, "This is a final appealable judgment as all issues relating to title to the real estate and damages [have] been resolved." Appellants' App. Vol. 2 at 19. The court further noted that the "parties are in agreement that this should be an appealable judgment." *Id.* Later that same day, the trial court granted the Wrights' emergency motion for discharge and release of the Knapps' lis pendens notice, expressly authorizing the Wrights to sell the subject property free of any claim listed in the notice. Three days later, the Wrights sold the subject property to a third party at auction. This appeal ensued. We will state additional facts in our discussion as necessary.

# Discussion and Decision

## Section 1 – Partial summary judgment in favor of the Wrights is appropriate.

[13] An appellate court reviews summary judgment using the same standard as the trial court. *Rogers v. Martin*, 63 N.E.3d 316, 320 (Ind. 2016). Summary judgment is appropriate only when the designated evidence shows no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* (citing Ind. Trial Rule 56(C) and *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014)). "We construe all factual inferences in the nonmoving party's favor and resolve all doubts as to the existence of a material issue against the moving party." *McCullough v. CitiMortgage, Inc.*, 70 N.E.3d 820, 824 (Ind. 2017) (citation omitted). Although our review is de novo, a trial court's judgment comes to the appellate court clothed with a presumption of validity, and the appellant bears the burden of proving that the trial court erred. *Schwartz v. Heeter*, 994 N.E.2d 1102, 1105 (Ind. 2013).

[14] In support of their motion for partial summary judgment, the Wrights asserted that the Real Estate Contract was unenforceable as a matter of law. Specifically, they claimed that the Real Estate Contract does not include a reasonably certain description of the land being conveyed as required for a contract regarding the sale of land, and thus the Knapps cannot maintain an action for specific performance. The Indiana Statute of Frauds provides in relevant part:

(b) A person may not bring any of the following actions unless the promise, contract, or agreement on which the action is based, or a memorandum or note describing the promise, contract, or agreement on which the action is based, is in writing and signed by the party against whom the action is brought or by the party's authorized agent:

…

(4) An action involving any contract for the sale of land.

Ind. Code § 32-21-1-1. "The Statute is intended to preclude fraudulent claims that would probably arise when one person's word is pitted against another's and that would open wide the floodgates of litigation." *Jernas v. Gumz*, 53 N.E.3d 434, 446 (Ind. Ct. App. 2016), *trans. denied*. The Statute does not govern the formation of a contract but only the enforceability of contracts that have been formed. *Fox Dev., Inc. v. England*, 837 N.E.2d 161, 165 (Ind. Ct. App. 2005).

[15] An agreement required to be in writing must completely contain the essential terms without resort to parol evidence in order to be enforceable. *Coca-Cola Co. v. Babyback's Int'l, Inc.*, 841 N.E.2d 557, 565 (Ind. 2006). This Court has stated,

Under the Statute, an enforceable contract for the sale of land must be evidenced by some writing: (1) which has been signed by the party against whom the contract is to be enforced or his authorized agent; (2) *which describes with reasonable certainty* each party and *the land*; and (3) which states with reasonable certainty the terms and conditions of the promises and by whom the promises were made.

*Schuler v. Graf*, 862 N.E.2d 708, 713 (Ind. Ct. App. 2007) (quoting *Johnson v. Sprague*, 614 N.E.2d 585, 588 (Ind. Ct. App. 1993)) (emphasis in *Schuler*). We have further explained regarding whether the land is described with reasonable certainty that

> it is not essential that the description have such particulars and tokens of identification as to render a resort to extrinsic aid entirely needless when the writing comes to be applied to the subject matter. The terms may be abstract and of a general nature, if with the assistance of external evidence the description, without being contradicted or added to, can be connected with and applied to the very property intended, *to the exclusion of all other property*.

*Id*. (quoting *Cripe v. Coates*, 124 Ind. App. 246, 250-51, 116 N.E.2d 642, 644-45 (1954) (citation omitted)). "Thus, it is a familiar rule that it is not the office of a description to identify lands, but simply to furnish the means of identification." *Id*. (citation and quotation marks omitted). In addition,

> [i]f the premises bargained for are a part of a larger tract owned by the vendor the question whether or not the writing satisfies the statute as to description will depend upon *whether within itself or by references made* it does or it does not in practical effect describe or designate the part covered by the contract.

*Cripe*, 124 Ind. App. at 251, 116 N.E.2d at 645 (citation omitted). Where the contract "merely describes the area or dimensions of the land sold, but not fixing the boundary between the land sold and the seller's remaining lands, it is insufficient to meet the requirements of the [S]tatue of [F]rauds." *Id*. (citations omitted).

[16] Moreover, it is well settled that in order to be enforceable, a contract must be reasonably definite and certain in its material terms so that the intention of the parties may be ascertained. *Wenning v. Calhoun*, 827 N.E.2d 627, 629 (Ind. Ct. App. 2005), *opinion on reh'g, trans denied*. The contracting parties "have the right to define their mutual rights and obligations, and a court may not make a new contract or supply omitted terms while professing to construe the contract." *Johnson v. Sprague*, 614 N.E.2d 585, 588 (Ind. Ct. App. 1993). "Absolute certainty in all terms is not required, but if any essential elements are omitted or left obscure and undefined, so as to leave the intention of the parties uncertain respecting any substantial terms of the contract, the case is not one for specific performance." *Id*.

[17] Here, during the summary judgment proceedings, both parties agreed that the Real Estate Contract does not adequately describe the portion of the Property being conveyed as required by the Statute of Frauds. Indeed, it was undisputed that while the Real Estate Contract was intended to provide for the sale of land that was part of a larger tract owned by the Wrights, the Real Estate Contract does not within itself or by references made, describe or designate the part, whether it be one acre, three acres, or some other acreage, or the boundaries thereof, covered by the contract. Although the Real Estate Contract notes that the approximate boundary lines of the land being conveyed were referenced in "Exhibit A," the Knapps clearly conceded to the trial court that no Exhibit A was attached to the contract. The Knapps further maintained that there was no evidence that the loose, undated, and unmarked drawing found by the Wrights'

attorney in 2013 existed at the time the Real Estate Contract was entered into, was intended to be Exhibit A, or in any way described or designated the portion of the Property, or the boundaries thereof, covered by the contract.

[18]   The Knapps attempt to change their position on appeal. They now assert that the Real Estate Contract contains a sufficient description of the land being conveyed based upon its reference to Exhibit A, and they claim that the drawing provides the requisite description of the portion of the Property that they are entitled to. However, it is well settled that a party may not change his or her theory on appeal and present arguments that are different from those raised in the trial court. *See Kentucky Nat'l Ins. Co. v. Empire Fire & Marine Ins. Co.*, 919 N.E.2d 565, 597 n.34 (Ind. Ct. App. 2010); *see also Dunaway v. Allstate Ins. Co.*, 813 N.E.2d 376, 387 (Ind. Ct. App. 2004) ("Issues not raised before the trial court on summary judgment cannot be argued for the first time on appeal and are waived."). The Knapps cannot now dispute material facts that were undisputed below, and they cannot now argue that the designated evidence supports a position opposite that which they maintained to the trial court.

[19]   Based upon the undisputed evidence presented and relied upon by the parties during the summary judgment proceedings, we agree with the trial court that the Real Estate Contract does not satisfy the Statute of Frauds because it lacks a reasonably certain description of the land being conveyed. As the Knapps do not assert that a genuine issue of material fact exists regarding an exception to the Statute, we conclude that the Real Estate Contract is unenforceable as a matter of law and the Knapps cannot maintain an action for specific

performance.[4] Accordingly, the trial court properly entered partial summary judgment in favor of the Wrights.[5]

## Section 2 – The trial court's award of damages is within the scope of the evidence.

[20] We next address the Knapps' contention that the trial court abused its discretion when it awarded the Wrights $24,000 in damages based on the fair market rental value of the subject property for the time that the Knapps occupied the subject property without making any payment to the Wrights. The Knapps argue that the award is speculative and not within the scope of the evidence. We disagree.

[21] The computation of damages is a matter within the trial court's sound discretion. *Fischer v. Heymann*, 12 N.E.3d 867, 870 (Ind. 2014). We will not reverse a damage award on appeal unless it is based on insufficient evidence or is contrary to law. *City of Jeffersonville v. Envtl. Mgmt. Corp.*, 954 N.E.2d 1000,

---

[4] Although the Knapps argued to the trial court that the doctrines of "acquiescence" and "estoppel" applied as "exceptions" to the Statute of Frauds, *see* Appellants' App. Vol. 5 at 61, they appear to have abandoned those arguments and do not raise them on appeal, so we need not address them. *See* Appellants' Amended Br. at 49 ("The only dispute of facts, which would defeat summary judgment, is the precise description of the real estate."). Additionally, the Knapps assert for the first time in their reply brief that a genuine issue of material fact remains as to whether the doctrine of part performance applies as an exception to the Statute of Frauds. Not only did the Knapps fail to specifically raise this claim before the trial court, but they also failed to raise this claim in their amended appellants' brief. Accordingly, the issue is waived. *See Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind. 2005) (noting that issues raised for first time in a reply brief are deemed waived on appeal).

[5] We similarly conclude that the trial court properly denied the Knapps' cross-motion for summary judgment as moot because the issues raised by the Knapps therein presuppose the enforceability of the Real Estate Contract, which is no longer a matter of controversy between these parties. *See Rainbow Cmty., Inc. v. Town of Burns Harbor*, 880 N.E.2d 1254, 1261 (Ind. Ct. App. 2011) (an issue is moot when it has ceased to be a matter of real controversy between the parties).

1015 (Ind. Ct. App. 2011). "In determining whether an award is within the scope of the evidence, we may not reweigh the evidence or judge the credibility of witnesses." *Id*.

[22] During the evidentiary hearing on damages, licensed real estate appraiser Robert Dorsam testified that he inspected the Property on January 8, 2016. He computed the current average fair market rental value for one acre of the Property with water rights ($700), one acre of the Property without water rights ($650), three acres of the Property with water rights ($1050), and three acres of the Property without water rights ($1000). Admitting that the assigned rental values were based on his current inspection of the Property and that he could not opine as to the fair market rental value for any time prior to his inspection, he did confirm that while "rental rates fluctuate … it did not appear that rental rates changed much" over the last several years. Tr. Vol 2. at 49. Based upon the evidence presented, the trial court concluded that the fair market rental value of the one-acre portion of the property with water rights occupied by the Knapps from June 2013 through June 2014 was $600 per month, and that for the period from July 2014 through July 2016, it was $700 per month. The sum of the rent for those periods was $24,000. Accordingly, the trial court awarded the Wrights damages in that amount.

[23] The Knapps complain that the fair market rental values presented by the appraiser established the rental values only for the single day he inspected the Property, and therefore the trial court's determination of a rental value for any other time was outside the scope of the evidence. However, the trial court

specifically noted that based upon the testimony presented, it was "reasonable to assume that the rental value was roughly the same in the year and a half preceding the time period identified by the appraiser" and that the value in 2013 "was presumably somewhat less because of additional improvements claimed to have been performed" by the Knapps as well as changes to the economy. Appellants' App. Vol. 2 at 17-18. We conclude that the trial court's determination in this regard was patently reasonable based on the evidence before it and that the court's award of $24,000 to the Wrights was well within the scope of the evidence. The Knapps have shown no abuse of discretion.

## Section 3 – The trial court did not err when it ordered the Knapps' lis pendens notice removed.

[24] Finally, we address the Knapps' assertion that the trial court erred when it ordered their lis pendens notice removed. Specifically, the Knapps argue that the trial court's removal of their notice and the discharge of their claim to the subject property was premature because any determination by the trial court regarding their ownership rights or lack thereof to the subject property "was not final until there was an appeal and a final decision was rendered." Appellants' Amended Br. at 57. Again, we disagree with the Knapps.

[25] Our supreme court has explained lis pendens generally as follows:

> The doctrine of lis pendens is fundamentally about notice. The term lis pendens itself means "pending suit," and it refers specifically to "the jurisdiction, power, or control which a court acquires over property" involved in a pending real estate action. Any successor in interest to real estate is deemed to take notice of

a pending action involving title to that real estate and is subject to its outcome. The judgment in the pending lawsuit binds all successors in interest, regardless of whether a successor was a party to the litigation. The doctrine's purpose is to protect the finality of court judgments by discouraging purchases of contested real estate.

*JPMorgan Chase Bank, N.A. v. Claybridge Homeowners Ass'n*, 39 N.E.3d 666, 670-71 (Ind. 2015).

[26] Here, the Knapps filed their lis pendens notice on September 12, 2016, claiming an interest in a three-acre portion of the Property pursuant to the Real Estate Contract, and giving notice to any successor in interest that they intended to appeal any decision by the trial court determining ownership rights and damages. The Wrights filed an emergency motion for discharge and removal of the notice stating that the lis pendens was based upon a contract that had been declared unenforceable by the trial court's entry of partial summary judgment. On September 23, 2016, having already determined that the Real Estate Contract was unenforceable and that the Knapps had no ownership rights to the subject property, the trial court entered its order awarding damages to the Wrights, stating that the order was a "final and appealable judgment as all issues relating to title to the real estate and damages [have] been resolved" and that "[t]he parties are in agreement that this should be an appealable judgment." Appellants' App. Vol. 2 at 19. That same day, the trial court granted the Wrights' emergency motion for discharge and removal of lis pendens, determining that "there has been a final determination rendered in this

case" and ordering the clerk of the Elkhart Circuit and Superior Courts to remove the lis pendens notice filed in this case. *Id.* at 21.

[27] Regarding lis pendens, Indiana Code Chapter 32-30-11-7 provides in relevant part,

> Upon the final determination of any suit brought:
>
> (1) for the purposes described in section 2 or 3 of this chapter; and
>
> (2) adversely to the party seeking to enforce a lien upon, right to, or interest in the real estate;
>
> the court rendering the judgment shall order the proper clerk to enter in the lis pendens record a satisfaction of the lien, right, or interest sought to be enforced against the real estate. When the entry is made, the real estate is forever discharged from the lien, right, or interest.

[28] We agree with the trial court that the final appealable judgment it entered on September 23, 2016, which disposed of all issues relating to title to the subject property and damages, constituted a "final determination" within the meaning of the statute, thus mandating the trial court to order the clerk of the Elkhart Circuit and Superior Courts to enter in the lis pendens record a satisfaction of the Knapps' lien, right, or interest sought to be enforced against the subject property. *See UFG, LLC v. Southwest Corp.*, 784 N.E.2d 536, 546 (Ind. Ct. App. 2003) (holding that plain and ordinary meaning of words "final determination" in Ind. Code § 32-30-11-7 includes a final appealable judgment entered by the trial court in the underlying action regardless of pending appellate rights), *trans.*

*denied*. Contrary to the Knapps' assertion, the fact that they intended to appeal the trial court's entry of partial summary judgment and award of damages did not render the trial court's entry of a final appealable judgment any less of a "final determination" of their suit within the meaning of the statute. *Id.*[6] The trial court did not err when it ordered the Knapps' lis pendens notice removed as required by statute.

## Conclusion

[29] In sum, the trial court properly entered partial summary judgment in favor of the Wrights declaring the Real Estate Contract unenforceable as a matter of law, and the court's subsequent award of $24,000 in damages to the Wrights was within the scope of the evidence presented. Moreover, the trial court did not err when it ordered the Knapps' lis pendens notice removed. Accordingly, we affirm the judgments of the trial court.[7]

---

[6] The Wrights rely on *Farmer's Bank of Frankfort v. First National Bank*, 30 Ind. App. 520, 66 N.E. 503 (1903), for the proposition that the trial court's entry of a final appealable judgment was not a "final determination" of their claims because they intended to appeal the trial court's decision. *See id.* at 506 (stating that one purchasing real estate after judgment rendered in trial court becomes purchaser pendente lite, and takes chances incident to appeal since appeal is not commencement of new action but prosecution of same action in higher court). We agree with the trial court that Indiana Code Section 32-30-11-7, enacted in 2002, and our much more recent decision in *UFG* interpreting the relevant statutory language, are the more accurate statements of the current state of the law regarding lis pendens.

[7] The Knapps raise additional issues in their reply brief that they did not raise in their amended appellants' brief. As we have already noted, issues raised for the first time in a reply brief are deemed waived on appeal. *See Monroe Guar. Ins. Co.*, 829 N.E.2d at 977.

Affirmed.

Riley, J., and Altice, J., concur.