## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 10 2020, 10:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Christopher M. Gilley
Anderson, Indiana

ATTORNEY FOR APPELLEE

Christopher P. Jeter
Fishers, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Nathaniel McKeon, | February 10, 2020 |
| *Appellant-Defendant,* | Court of Appeals Case No. 19A-PL-1538 |
| v. | Appeal from the Hamilton Superior Court |
| The George Insurance Agency, Inc., | The Honorable Jonathan M. Brown, Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 29D02-1709-PL-8524 |

**Tavitas, Judge.**

# Case Summary

Nathaniel McKeon appeals the trial court's award of damages to The George Insurance Agency, Inc. ("Company"). We affirm and remand.

# Issues

McKeon raises two issues, which we restate as:

    I.    Whether the trial court properly excluded testimony during the damages hearing.

    II.    Whether the trial court properly calculated damages owed to the Company.

On cross-appeal, the Company argues that it should be awarded appellate attorney fees.

# Facts

The Company is an independent insurance agency with its principal office in Hamilton County. McKeon entered into an independent subcontractor agreement ("Agreement") with the Company on July 1, 2012 and acted as an insurance agent for the Company. The Agreement included provisions regarding McKeon's non-disclosure of confidential information, a non-piracy provision, and a non-competition agreement for two years in certain counties of Indiana. The Agreement also included a provision for attorney fees for the prevailing party in the event of legal action between the parties.

[4] In February 2017, McKeon resigned as an independent subcontractor for the Company. McKeon then began working as an insurance agent at a competing business, Voldico, Inc., and used the Company's confidential information to solicit clients of the Company.

[5] In September 2017, the Company filed a complaint against McKeon for breach of the non-competition clause of the Agreement; breach of the non-piracy clause of the Agreement; breach of the non-disclosure of information clause of the Agreement; and attorney fees for breach of the Agreement.[1] The Company provided McKeon with requests for admissions, which McKeon did not answer in a timely manner and were deemed admitted pursuant to Indiana Trial Rule 36.

[6] In March 2018, the Company filed a motion for summary judgment. The Company designated evidence: (1) that McKeon breached the Agreement by taking thirty-two clients, totaling $18,607.51 in lost annual commissions; (2) that "it is custom for an agent who wants to buy another agent's book of business or clients to pay three times the value of the commission to acquire that book of business or client"; and (3) that the breach had cost the Company over $55,822.52, by using a multiplier of three times the annual commissions, and the damages were "increasing monthly." Appellant's App. Vol. II p. 55.

---

[1] The Complaint also included a claim against Voldico. Voldico was not involved in the summary judgment proceedings or damages hearing, and we do not address it further.

Summary Judgment Exhibit 5 to the designation detailed the lost client accounts and losses of commissions.

[7] McKeon filed a motion to withdraw and to amend his admissions, which the trial court granted. McKeon also filed an "Objection to the Motion for Summary Judgment." *Id.* at 90. In the objection, McKeon mentioned his pending motion to withdraw and to amend his admissions, but he failed to designate any evidence in support of his objection and failed to request an extension of time.

[8] After a hearing in December 2018, the trial court entered an order granting the Company's motion for summary judgment and scheduled a hearing on damages. At the evidentiary hearing regarding damages, Gregory George, owner of the Company, testified that, in the insurance industry, when an account is sold, it is sold "for a multiplier over just the annual commission." Tr. Vol. II pp. 42-43. According to George, "personal lines accounts could sell for anywhere between [a multiplier of] three and three and a half, and a commercial account could sell between [a multiplier of] two and three quarters and three and a quarter." *Id.* at 42. During George's testimony, Plaintiff's Exhibit 1 was admitted over McKeon's objection. The spreadsheet was a revision of Exhibit 5 from the summary judgment pleadings and detailed alleged lost client accounts and commissions in the amount of $19,112.46. George, however, testified that Plaintiff's Exhibit 1 was incorrect because he discovered that one of the clients "didn't go with [McKeon], but [the client] still has a personal relationship with [McKeon]." *Id.* at 39.

During cross-examination, McKeon attempted to question George regarding whether individual client accounts listed on Plaintiff's Exhibit 1 amounted to a breach of the Agreement. The Company argued that the hearing was simply to determine damages, not relitigate whether McKeon breached the Agreement. The trial court noted that McKeon had the opportunity to designate evidence regarding the individual clients during the summary judgment proceeding but failed to do so. The trial court sustained the Company's objection to McKeon's line of questioning.

Michael Cox, owner of Werner Cox Insurance Services, which is another insurance company in the area, also testified regarding multipliers for the sale of insurance accounts. According to Cox, insurance accounts sell for "anywhere from one and a half on the very, very low side to three and a quarter, three and a half, possibly." *Id.* at 71.

McKeon also testified at the damages hearing and attempted to testify regarding the individual clients listed on Plaintiff's Exhibit 1 and Summary Judgment Exhibit 5. The Company objected, and the trial court again sustained the Company's objection to the line of questioning.

After the damages hearing, the trial court entered an order finding that the Company "has been damaged in the amount of $55,822,53, due to [McKeon's] breach of the Agreement." Appellant's App. Vol. II p. 10. The trial court also awarded the Company $9,863.43 in attorney fees pursuant to the written provisions of the Agreement, for a total of $65,685.96, plus eight percent

interest. McKeon now appeals the trial court's order regarding the damages hearing. McKeon does not appeal the summary judgment order.

# Analysis

## I. Exclusion of Evidence Regarding Breach

[13] McKeon challenges the exclusion of evidence at the damages hearing. The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for an abuse of discretion. *Reed v. Bethel*, 2 N.E.3d 98, 107 (Ind. Ct. App. 2014). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.*

[14] McKeon argues that the trial court abused its discretion by limiting his cross-examination of George and McKeon's direct testimony regarding the individual accounts the Company alleged to be taken by McKeon. The context in which McKeon attempted to present this evidence is determinative here. The Company filed its motion for summary judgment and designated evidence that McKeon breached the Agreement. Part of the designated evidence was Summary Judgment Exhibit 5, which listed the clients taken by McKeon. McKeon did not designate any evidence in response, and the trial court granted summary judgment to the Company and set the matter for a damages hearing.

[15] During the evidentiary damages hearing, the Company admitted Plaintiff's Exhibit 1, which included additional clients not listed on Summary Judgment Exhibit 5. Through the cross-examination of George and the direct

examination of McKeon, McKeon then sought to challenge the evidence that he took the individual clients from the Company. The trial court, however, had already granted summary judgment regarding McKeon's breach of the Agreement. McKeon was, in effect, attempting to introduce evidence that he did not breach the Agreement after he had failed to designate such evidence in response to the Company's motion for summary judgment. *See Murphy v. Curtis*, 930 N.E.2d 1228, 1234 (Ind. Ct. App. 2010) ("[A] party who does not respond to a motion for summary judgment may be limited to the facts established by the movant's submissions."), *trans. denied*.

[16] The only issue to be determined at the damages hearing was the amount of damages owed by McKeon for the breach. Under these circumstances, we cannot say that the trial court abused its discretion by limiting McKeon's line of questioning during George's cross-examination and McKeon's direct examination.

## II. Calculation of Damages

[17] Next, McKeon argues that the trial court erred in calculating the damages owed to the Company. The computation of damages is a matter within the trial court's sound discretion. *Knapp v. Estate of Wright*, 76 N.E.3d 900, 909 (Ind. Ct. App. 2017). *trans. denied*. We will not reverse a damages award on appeal unless it is based on insufficient evidence or is contrary to law. *Id.* "In determining whether an award is within the scope of the evidence, we may not reweigh the evidence or judge the credibility of witnesses." *Id.*

[18]     The Agreement provided that:

> Subcontractor covenants and agrees that if Subcontractor shall breach any of the provisions of Section 7, 8, and 9 of this Agreement, the Agency shall be entitled to . . . repayment of all profits, compensation, commissions, remuneration, or other benefits that Subcontractor directly or indirectly has realized and/or may realize arising out of, or in connection with, any such breach.  These remedies shall be in addition to, and not in limitation of, any other rights or remedies to which the Agency is or may be entitled at law, in equity, or under this Agreement.

Appellant's App. Vol. II p. 63.

[19]     A party injured by a breach of contract may recover the benefit of its bargain but is limited in its recovery to the loss actually suffered. *L.H. Controls, Inc. v. Custom Conveyor, Inc.*, 974 N.E.2d 1031, 1043 (Ind. Ct. App. 2012).  A damage award must be based upon some fairly defined standard, such as cost of repair, market value, established experience, rental value, loss of use, loss of profits, or direct inference from known circumstances.  *Id.*  An award of lost profit damages is proper if the evidence is sufficient to allow the trier of fact to estimate the amount with a reasonable degree of certainty and exactness.  *Id.*

[20]     Lost profits need not be proved with mathematical certainty and are not impermissibly uncertain where there is testimony that, while not sufficient to put the amount beyond doubt, is sufficient to enable the factfinder to make a fair and reasonable finding as to the proper damages.  *Id.*  Any doubts and uncertainties as to proof of the exact measure of damages must be resolved

against the defendant; however, an award of damages for lost profits cannot be based upon mere conjecture or speculation. *Id.*

[21] McKeon argues that the trial court erred by using a multiplier of three times the annual commission in calculating the damages. McKeon contends that use of the multiplier resulted in the award of speculative damages. McKeon also argues that compensatory damages "must be confined to the actual damages sustained." Appellant's Br. p. 10.

[22] George presented evidence that McKeon took clients from the Company that generated annual commissions totaling at least $18,607.51.[2] George testified that, in the insurance industry, when an account is sold, it is sold "for a multiplier over just the annual commission." Tr. Vol. II pp. 42-43. According to George, "personal lines accounts could sell for anywhere between [a multiplier of] three and three and a half, and a commercial account could sell between [a multiplier of] two and three quarters and three and a quarter." *Id.* at 42.

[23] Cox, the owner of another insurance company in the area, also testified regarding multipliers for the sale of insurance accounts. According to Cox, insurance accounts sell for "anywhere from one and a half on the very, very low

[2] At the end of the damages hearing, the Company stated: "If the Court would prefer just to - for purposes of making the record clean on the summary judgment issue to use Exhibit 5 of our summary judgment motion, which I think is - includes one account less, the times three book value is $55,822.53. We'd be okay with that." Tr. Vol. II p. 85. Consequently, we use Summary Judgment Exhibit 5 in reviewing the damages award.

side to three and a quarter, three and a half, possibly." *Id.* at 71. The Company requested a multiplier of three, and the trial court included this multiplier in its damages award.

[24] Such damages for lost profits need not be proven with exact certainty. The damages awarded by the trial court were supported by the evidence and were not speculative. The Company presented evidence that the industry standard for purchasing insurance accounts includes the use of a multiplier of annual commissions. The Company then presented evidence on a range of multipliers that are used in such circumstances. Although the trial court had a range of multipliers presented by the evidence, the trial court chose to use a multiplier of three, which was within the scope of the evidence. The annual commissions of accounts taken by McKeon amounted to $18,607.51. Using a multiplier of three, the trial court properly calculated damages of $55,822.53, plus attorney fees.[3] As such, the trial court did not abuse its discretion in calculating the damages award as a result of McKeon's breach of the Agreement.

### III. *Appellate Attorney Fees*

[25] The Company requests that we remand to the trial court for the award of appellate attorney fees. The Agreement at issue here included a provision for attorney fees for the prevailing party in the event of legal action between the parties. The Company is the prevailing party here and, accordingly, we remand

---

[3] McKeon does not appear to contest the award of attorney fees in the amount of $9,853.43.

to the trial court for the calculation and award of appellate attorney fees to the Company.

# Conclusion

The trial court did not abuse its discretion by excluding certain evidence during the damages hearing, and the trial court did not abuse its discretion in calculating damages awarded to the Company. The Company, additionally, is entitled to the award of appellate attorney fees pursuant to the Agreement, and accordingly, we remand to the trial court for calculation of such attorney fees. We affirm and remand.

Affirmed and remanded.

Najam, J., and Vaidik, J., concur.